**Kulvir Singh BARAPIND,**
**Plaintiff/Petitioner,**

v.

**Janet RENO, Attorney General of the United States of America, and Madeline Albright, Secretary of State of the United States of America, Defendant/Respondent.**

**No. Civ–F–98–5583 OWW.**

United States District Court,
E.D. California.

June 4, 1999.

Karen L. Snell, Clarence and Snell LLP, San Francisco, CA.

Jagdip Singh Sekhon, San Francisco, CA.

Glyndell E. Williams, U.S. Atty., Sacramento, CA.

Stanley A. Boone, U.S. Atty., Fresno, CA.

Teresa A. Wallbaum, U.S. Dept., of Justice, Office of Immigration Litigation, Washington, DC.

## MEMORANDUM OPINION AND ORDER RE DEFENDANT'S MOTION TO DISMISS

WANGER, District Judge.

### I. *INTRODUCTION*

The United States moves to dismiss Kulvir Singh Barapind's complaint for declaratory and injunctive relief and second, successive petition for habeas corpus, for lack of subject matter jurisdiction and failure to state a claim. *See* Fed.R.Civ.P. 12(b)(1) & (6). Plaintiff opposes the motion.

### II. *PROCEDURAL HISTORY*

Plaintiff arrived in the United States at the Los Angeles International Airport on April 25, 1993, under a passport bearing the false name, Mahim Mehra. An INS officer immediately detained Plaintiff and charged him as an excludable alien under the Immigration & Nationality Act ("INA"). Mr. Barapind conceded he is excludable under the INA and applied for asylum and withholding of deportation under a false name, based on his alleged fear he would be returned to India and persecuted. On June 7, 1993, he applied for asylum/withholding in his true name.

After an extended hearing before the Immigration Judge ("IJ"), a January 13, 1994, order found Plaintiff excludable and

lacking in credibility; ineligible for asylum because he persecuted others; not statutorily eligible for asylum based on at least one of the five grounds in the INA, to wit: Plaintiff sought to enter the United States to work without a valid labor certification; to enter the United States by fraud or willful misrepresentation of material facts while an alien; and was an intended immigrant without a valid visa. Plaintiff formally conceded his excludability under all I & N Form I–122 charges.

On July 26, 1994, the Board of Immigration Appeals ("BIA"), dismissed the appeal, found Plaintiff barred from refugee status because he was a threat to national security of the United States; had not established a well-founded fear of persecution; and was incredible under the IJ's findings.

On August 3, 1994, Plaintiff petitioned for writ of habeas corpus review of the BIA decision in the U.S. District Court for the Central District of California, *Barapind v. Rogers*, Case No. CV–94–5279 JGD (RNB).[1] The District Court issued a stay of deportation to India during the pendency of District Court proceedings.

On March 14, 1996, the District Court ordered a remand for further proceedings before the BIA pursuant to 8 U.S.C. § 1158(a).[2] The District Court upheld the adverse credibility determination against Plaintiff and directed the BIA to review "extradition documents" to determine whether the information in such documents barred Plaintiff from relief under 8 U.S.C. §§ 1158(a) (asylum) and 1253(h)

(withholding of deportation). Plaintiff appealed. On May 15, 1997, the Ninth Circuit affirmed, but modified the remand order, rejecting the IJ's adverse credibility determination and veracity findings as to criminal allegations made against plaintiff by the Indian government in extradition documents. *Barapind v. Rogers*, 114 F.3d 1193 (Table), 1997 WL 267881 (Text) (9th Cir.1997). No party sought review. The District Court's modified remand order followed on July 17, 1997, directing the BIA to re-adjudicate Plaintiff's asylum/withholding application. On October 30, 1997, on the Attorney General's (INS) motion, over plaintiff's objections, the BIA ordered the exclusion-asylum proceedings held in abeyance pending the extradition request. There have been no further proceedings before the BIA.

Petitioner was transferred to custody of the U.S. Marshal in Fresno, California, pursuant to a warrant of arrest issued September 18, 1997. On September 18, 1997, the government of India filed a complaint for extradition in the U.S. District Court for the Eastern District of California, Fresno, erroneously numbered by the Clerk as Case No. MC–F–97–96. The case was renumbered and assigned as CV–F–98–5489 OWW, *In the Matter of the Indian Government's Request for the Extradition of Kulvir Singh aka Kulvir Singh Barapind* (the Extradition case). The Extradition Case was based on a diplomatic note prepared by the Indian Embassy filed with the Department of State on November 29, 1994, supported by a

1. When Barapind filed his first habeas petition, INA § 106 provided that "the sole and exclusive procedure for ... the judicial review of all final orders of deportation" was by petition for review with the appropriate court of appeals. *See* 8 U.S.C. § 1105a(a) (1994). The INA also provided for habeas: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." *See* 8 U.S.C. § 1105a(a)(10) (1994).

2. Section 1158 provided in 1994 as follows:
(a) The Attorney General shall establish a procedure for an alien physically present in

the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
8 U.S.C. § 1158(a) (1994), amended effective Apr. 24, 1996 (by the Antiterrorism and Effective Death Penalty Act of 1996), and amended effective Sept. 30, 1996 (by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

declaration of the Attorney–Advisor in the Office of the United States Department of State Legal Advisor, acknowledging and finding the extradition request complete as of December 1994.

On February 17, 1998, Plaintiff filed this complaint for declaratory/injunctive relief with a second, successive habeas petition in the Central District of California, Case No. 98–1122 DT (RNB). A notice of related case to the first habeas case, resulted in reassignment to Judge Davies on February 27, 1998, who, by *sua sponte* order transferred this second case to the United States District Court for the Eastern District of California, first to Sacramento where it was assigned Case No. CIV–S–98–5027 FCD GGH, and then to the Fresno Division where it was renumbered Case No. CIV–F–98–5583 OWW SMS.

Plaintiff's counsel admitted at oral argument that instead of seeking to amend the initial, still active, habeas case in the Central District, they chose to file this new case, as a related case in the Central District of California. The Government of India maintains it has the right to extradite Plaintiff before conclusion of and without regard to the BIA and INA proceedings, the pending Central District case, or this case.

On April 29, 1998, the Magistrate Judge denied Plaintiff's motion for pretrial release and stayed the Extradition Case, pending outcome of the BIA proceeding. An October 14, 1998, District Court order vacated that stay. An October 13, 1998, order consolidated this case for pretrial proceedings with the Extradition Case.

### III. BACKGROUND

This case seeks declaratory, injunctive, and habeas relief to force the Attorney General/BIA to vacate the BIA decision to hold in abeyance and to adjudicate the exclusion/asylum proceedings. Barapind has filed a certified copy of the administrative record and the Snell Declaration in Support of Judicial Consideration of Humanitarian Concerns Regarding Plaintiff's Extradition to India. Defendants do not object to the declaration or documents, which detail her unsuccessful efforts to address humanitarian concerns to the U.S. State Department in an unrelated case, *In the Matter of Requested Extradition of James J. Smyth*, 863 F.Supp. 1137 (N.D.Cal.1994), *reversed*, 61 F.3d 711 (9th Cir.), *modified*, 73 F.3d 887, *reh'g en banc denied*, 72 F.3d 1433 (9th Cir.), *cert. denied*, 518 U.S. 1022, 116 S.Ct. 2558, 135 L.Ed.2d 1076, (1996). Plaintiff filed a March 15, 1999, surreply to Defendant's reply.[3] The motion to dismiss was heard May 18, 1999. Letter briefs, not authorized by Local Rules, *see* L.R. 7–130; have been filed and considered.

### IV. LEGAL STANDARDS

#### A. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FED.R.CIV.P. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. It is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221 (9th Cir.1989); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Id.* at 733; *FDIC v. Nichols*, 885 F.2d 633, 635–36 (9th Cir.1989).

In a 12(b)(6) facial attack on the complaint, "the court must consider the allegations of the complaint as true."

---

**3.** Local Rules permit a reply brief by the moving party, not the opposing party. The surreply has been considered. Defendants do not object. L.R. 78–230(d).

*Mortensen v. First Federal S & L Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977); *see also, NL Indus. Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The motion will be denied unless the allegations appear to be frivolous. *See Black v. Payne,* 591 F.2d 83, 86 n. 1 (9th Cir.), *cert. denied,* 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). Plaintiff's allegations need not be taken as true when considering a Rule 12(b)(1) motion. *Thornhill Publishing,* 594 F.2d at 733.

■ Defendants may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.) (citations omitted), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.*

## B. *MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM*

■ A motion to dismiss for failure to state a claim under Fed.R. of Civ.P. 12(b)(6) is disfavored and rarely granted: "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). The court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff.) *See Oscar v. Univ. Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992); *NL Industries v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The court need not accept as true allegations that contradict facts which may be judicially noticed. *Mullis v. United States Bankruptcy Ct.,*

828 F.2d 1385, 1388 (9th Cir.), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). Matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986); conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied, sub nom., Wyoming Community Development Authority v. Durning,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.) "document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994).

## V. *DISCUSSION*

### A. *ALLEGATIONS OF COMPLAINT*

The allegations of Barapind's complaint, accepted as true for the purposes of the 12(b)(6) motion are stated in the Scheduling Conference Order and above. He alleges that members of the Sikh religion in India are persecuted by the government of India because of their efforts to obtain an independent nation of Khalistan. *See, e.g.,* Cpt. ¶¶ 56–58. Barapind, while a college student in Jalandhar, Punjab, India, joined and participated in the All India Sikh Student Federation and Sikh Student Federation organizations seeking a sovereign Sikh nation of Khalistan. Cpt. ¶¶ 5–19; 47–50. Because of his Federation involvement, Barapind was arrested numerous times and tortured by the Indian police, then released. Cpt. ¶¶ 20–46. Despite police harassment and killing of Federation members, Barapind continued his protest activities. Cpt. ¶¶ 61–63. Barapind's fam-

ily was harassed by police in an effort to obtain Barapind's surrender. Cpt. ¶¶ 51–55; 64–65. Barapind escaped from India to the United States using false documents in April 1993. Cpt. ¶ 66. Barapind was immediately detained and arrested by INS upon his arrival at Los Angeles International Airport before entering the United States. Cpt. ¶¶ 67–86.

On September 18, 1997, the United States Attorney, on behalf of India, filed the Extradition Case. Cpt. ¶¶ 105–109. On October 30, 1997, the BIA stayed his asylum proceeding pending extradition. Cpt. ¶ 110.

Barapind invokes federal subject matter jurisdiction against the Attorney General and Secretary of State, under the declaratory relief, 28 U.S.C. § 2201; the Administrative Procedure Act, 5 U.S.C. § 701; habeas corpus, 28 U.S.C. § 2241; federal question, 28 U.S.C. § 1331; the Immigration and Naturalization Act, 8 U.S.C.; All Writs Act, 28 U.S.C. § 1651; equity jurisdiction; and Constitution Article III. He seeks:

1. A declaration he has a right to finally adjudicate his asylum application, Cpt. ¶ 112, and that the BIA's stay of exclusion-asylum proceedings violates the INA and due process. Cpt. ¶ 113, 114.

2. An order compelling the Attorney General (BIA) to adjudicate his asylum application. Cpt. ¶ 137.

3. To enjoin prosecution of the Extradition case.

4. To bar extradition based on the equitable doctrine of laches and estoppel. Cpt. ¶¶ 126–130.

### B. *PROPRIETY OF MAINTAINING THE SECOND CASE IN THIS COURT*

#### 1. *IS THIS SECOND, SUCCESSIVE HABEAS PETITION BARRED FROM REVIEW FOR ABUSE OF THE WRIT OR PURSUANT TO AEDPA OR IIRIRA?*

■ A petition for writ of habeas corpus may be filed in the district court by a person "in custody under or by color of the authority of the United States" who seeks to challenge the legality of the detention. *See* 28 U.S.C. § 2241. The writ has been available to aliens in the custody of the Attorney General (INS) to challenge decisions regarding their immigration. *See Foti v. INS*, 375 U.S. 217, 231, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) ("... [that Court of Appeals has initial, exclusive jurisdiction to review denial of suspension of deportation] in no way impairs the preservation and availability of habeas corpus relief" under 1961 Act); *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955) (availability of the writ under the 1952 Act); *Nishimura Ekiu v. United States*, 142 U.S. 651, 660, 12 S.Ct. 336, 35 L.Ed. 1146 (1892) (1891 Act).

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified habeas corpus law to preclude a second or successive petition, unless petitioner first obtains a Court of Appeals order authorizing the district court to consider the petition. *See* 28 U.S.C. § 2244. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2067–68, 138 L.Ed.2d 481 (1997) (AEDPA's amendments apply only to cases filed after the AEDPA's effective date, April 24, 1996). *See also Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir.), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). The "gatekeeping" provisions of the AEDPA amend 28 U.S.C. § 2244, as follows:

(a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

(b)(1) A claim presented in a second or successive habeas corpus application

under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

▮ Petitioner is detained as a flight risk and danger to the community on an extradition arrest warrant issued by the Magistrate Judge. Petitioner does not challenge this detention order, *see* § 2244(a); nor has he filed a § 2254 motion, *see* § 2244(b). Section 2241 is not expressly referenced in § 2244. The AEDPA codifies the "abuse of the writ" doctrine, under which district courts are precluded from hearing second or successive habeas petitions if the writ presents no new grounds for relief unless the ends of justice require consideration of the merits. *See McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Farmer v. McDaniel,* 98 F.3d 1548, 1549 (9th Cir.) (prior habeas corpus petition need not be decided on the merits for "abuse of the writ" to apply, pre-AEDPA

case; rather, "this [is] an important factor that informs the district court's discretion in applying the abuse of writ doctrine"), *cert. denied,* 520 U.S. 1188, 117 S.Ct. 1474, 137 L.Ed.2d 686 (1997). *See also Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (AEDPA did not remove original habeas jurisdiction from the Supreme Court and the "gatekeeping" provisions codify pre-existing limitations on successive petitions) *Felker* notes at p. 664, 116 S.Ct. 2333:

> The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice "abuse of the writ." The added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a "suspension" of the writ contrary to Article I, § 9.

▮ A second petition can be entertained where petitioner demonstrates cause and prejudice. *McCleskey,* 499 U.S. at 494, 111 S.Ct. 1454; *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989).

▮ Plaintiff's first 1994 habeas petition, filed in the Central District, precedes the effective date of the AEDPA. The first petition sought to review the BIA's order affirming plaintiff's admitted excludability and denial of asylum/withholding of deportation. Petitioner's claims were decided on the merits by the district and appeals courts, reversing the BIA's final decision and remanding to the BIA for readjudication.

Plaintiff's second habeas petition was filed February 17, 1998, after the effective date of the AEDPA. That petition was jurisdictionally infirm as plaintiff was then detained in the Eastern District. *See LoBue v. Christopher,* 82 F.3d 1081, 1082 (D.C.Cir.1996) (habeas may only be maintained in district in which petitioner is detained). The second petition claims the Attorney General (BIA) has wrongly stayed the asylum/withholding application

after remand. Plaintiff seeks to compel the Attorney General/BIA to readjudicate his asylum claims.

In *Stewart v. Martinez–Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), petitioner filed three federal habeas petitions prior to the AEDPA's effective date, all dismissed *without* prejudice. *See* 118 S.Ct. at 1620. The same claims were raised in a fourth pre-AEDPA petition, and except for a *Ford* claim,[4] were denied on the merits. *See id.* The *Ford* claim was dismissed *without* prejudice as premature, and was renewed in a habeas claim filed after the AEDPA's effective date. Because the *Ford* claim "had never been adjudicated on the merits by a federal court, the Ninth Circuit held the AEDPA's restrictions inapplicable, excusing an application for authority to file a second petition." *Id.* The Supreme Court affirmed, finding the post-AEDPA *Ford* claim petition not a second or successive petition. A claim raised in a pre-AEDPA habeas petition that is dismissed without prejudice and not adjudicated by a federal court, is not a "second or successive" petition under the AEDPA. Here, Plaintiff's first petition was finally adjudicated on the merits.

*Stewart* did not reach the question presented here, whether the AEDPA bars a second habeas petition that seeks, in effect, to enforce an order in a prior habeas case. Barapind seeks asylum. This claim was raised and addressed on the merits in the original habeas case. Plaintiff's second habeas petition is to force judicial consideration of humanitarian concerns. Habeas is not an appropriate remedy to force the Attorney General to exercise her discretion to adjudicate an asylum proceeding, nor to compel the Secretary of State to consider humanitarian concerns in a forum not authorized by law.

Federal courts apply the "gatekeeping" provisions to successive petitions filed under § 2241. *See, e.g., Gibson v. Knowles,* 166 F.3d 1220 (Table), 1999 WL 12994 (Westlaw) (10th Cir.1999) (dismissing successive § 2241 petition under § 2244(a)); *Davis v. Fechtel,* 150 F.3d 486 (5th Cir. 1998) (affirming district court's dismissals of second and third § 2241 petitions for abuse of the writ); *Valona v. United States,* 138 F.3d 693 (7th Cir.1998) ("§ 2244(a) bars successive petitions under § 2241 directed to the same issue concerning execution of a sentence"). Petitioner's habeas petition abuses the writ. It is also premature without a final BIA adjudication.

The first habeas case decided the BIA properly found plaintiff excludable, but remanded the asylum/withholding decision for readjudication. The BIA has not readjudicated petitioner's asylum/withholding proceeding. Plaintiff's second habeas case challenges the Attorney General's discretionary decision to institute, abate, or adjudicate his asylum/withholding proceeding. Plaintiff did not seek leave to amend his first petition to add claims to compel the Attorney General/BIA to readjudicate the asylum/withholding proceeding, nor to enforce the remand order.

Plaintiff's successive habeas petition challenges the Attorney General's decision to halt the asylum proceedings. He seeks to compel exercise of the Attorney General's discretion to prosecute and adjudicate asylum proceedings before the Extradition Case is decided. This is not a proper use of the writ. The Extradition Case is a separate case brought by a different sovereign. No fundamental miscarriage of justice is implicated if the successive habeas petition is dismissed for abuse of the writ.

## 2. *FEDERAL COMITY RULE RE DUPLICATIVE CLAIMS*

 When a complaint involving the same parties and issues has already been filed in another federal district court, the court has discretion to abate or dismiss the second action. *Alltrade, Inc. v. Uni-*

---

4. *See Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Eighth Amendment prohibits execution of insane).

*weld Products, Inc.*, 946 F.2d 622, 623 (9th Cir.1991) (*citing Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); *Filtrol Corporation v. Kelleher*, 467 F.2d 242 (9th Cir.), *cert. denied*, 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973). Federal comity and Judicial economy give rise to rules which allow a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court.[5] *Alltrade*, 946 F.2d at 624.

### a. *DUPLICATIVE ACTIONS*

■■■■ A suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *See Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D.Ill.1983). The parties need not be identical. The fact the Secretary of State was added does not change the essential nature of Plaintiff's claims to compel readjudication. If the parties "represent the same interests" the court may determine the second action is duplicative. *See The Haytian Republic*, 154 U.S. 118, 124, 14 S.Ct. 992, 38 L.Ed. 930 (1894).

Plaintiff's counsel was asked to identify specific legal authority for filing this case. None was provided. This case was filed in the Central District after the Extradition Case. The first habeas case was then, and is now an active case in the Central District, seeking identical relief; to have the asylum/withholding application decided by the INS. This is a multiplication of the proceedings. *See* 28 U.S.C. § 1927.

■■■■ A litigant has no right to maintain a second action duplicative of another. *See The Haytian Republic*, 154 U.S. at 124, 14 S.Ct. 992; *Ridge Gold Standard Liquors*, 572 F.Supp. at 1213. A litigant "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v.*

*Eaton Corp.*, 563 F.2d 66, 70 (3d Cir.1977); *see also Friends of the Earth, Inc. v. Crown Central Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir.1996). When a plaintiff files a second complaint alleging the same claim as a prior, pending, related action, the second complaint may be dismissed. *See Zerilli v. Evening News Assn.*, 628 F.2d 217, 222 (D.C.Cir.1980).

■■■ Unlike *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir.1985), where plaintiff did not file a notice of related case, here, plaintiff did so. Before the relationship of this case to the existing Central District case was addressed, this case was transferred to the Eastern District of California, where it is now pending as a parallel, duplicative case. *See also Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed.Cir.1991). The district court must "ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints to expand procedural rights he would not otherwise enjoy—particularly for the purpose of circumventing the rules pertaining to the amendment of complaints." *Walton v. Eaton Corp.*, 563 F.2d at 71 (cited in *Oliney*, 771 F.2d at 859). Plaintiff did not seek to transfer or amend the first habeas case under the provisions of 28 U.S.C. §§ 1406(a), 1404(a), or Federal Rule of Civil Procedure Rule 15. Although the number of claims have expanded, they all seek the same result: to compel the Attorney General to grant Plaintiff asylum/withholding.

### b. *FIRST TO FILE RULE*

■■■■ The first to file doctrine of federal comity permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96

---

**5.** Although the 1998 habeas case was filed as a related case to the 1994 habeas case, the Central District did not consolidate the cases prior to transferring this case to the Eastern District, where the Extradition case had been filed.

(9th Cir.1982) ("comity principle [ ] avoid[s] placing an unnecessary burden on the federal judiciary, and [ ] avoid[s] the embarrassment of conflicting judgments"). "[I]ncreasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties." *Crawford v. Bell,* 599 F.2d 890, 893 (9th Cir.1979).

▇▇▇▇ Three factors are considered in applying the first-to-file rule: 1) the chronology of the two actions; 2) the similarity of the parties; and 3) the similarity of the issues. *See Alltrade,* 946 F.2d at 625–26. The "first to file" rule is not rigid or inflexible, but is applied to serve sound judicial administration principles. *Pacesetter Systems,* 678 F.2d at 96. The rule may be dispensed with for equitable reasons; for example, where the first action is filed merely as a means of forum shopping or other indicia of bad faith, *see Alltrade,* 946 F.2d at 628; when the later-filed action has progressed further, *see Church of Scientology of California v. United States Dept. of the Army,* 611 F.2d 738, 750 (9th Cir.1979); or where "the balance of convenience weighs in favor of the later-filed action." *Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D.Cal.1994). The rule does not apply where different parties or issues are involved in the two actions. *See Alltrade,* 946 F.2d at 628 n. 13 (*citing Pacesetter Systems,* 678 F.2d at 96).

▇▇▇▇ This case was filed in a different district, after the Extradition Case. It collaterally seeks to redecide denial of stay of the Extradition Case. The first habeas case directly addresses plaintiff's asylum/withholding proceeding. There is no need for this case to do so. Plaintiff's ultimate concern is that he will be unable to present humanitarian reasons to prevent his extradition to India.[6] Plaintiff

bears the burden of showing special circumstances warrant non-dismissal or abatement of the second action. *See First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989). The Extradition case will decide the sufficiency of evidence to justify extradition, or if it is a pretext for plaintiff's political persecution. *See Austin v. Healey,* 5 F.3d 598, 600 (2d Cir.1993). A district court cannot assess the "political climate" in India under the non-inquiry rule. However, in extradition, an offense may be nonextraditable because it falls within the political offense exception. *Quinn v. Robinson,* 783 F.2d 776, 787 (9th Cir.1986). The 1931 Treaty contains a political offense exception:

> A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, *or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offence of a political character.*

Treaty, Art. 6 (emphasis added).

▇▇▇▇ As a principle of sound judicial administration, the first suit should have priority, absent a showing of balance of convenience in favor of the second case, *see William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177 (2d Cir. 1969), or unless there are special circumstances which justify giving priority to the second action *Id.* at 178. The balance of convenience does not weigh in favor of Plaintiff's second action, which seeks to dictate the order of adjudication. No special circumstances prevent application of the "first to file" rule. To the contrary, this case creates the potential for conflicting or inconsistent rulings between courts in two different districts.

---

6. In Extradition cases 18 U.S.C. § 3184 limits the court's authority to decide the existence of a treaty, the offense charged, and the quantum of evidence offered. The Secretary of State, not the court, has exclusive jurisdiction to consider humanitarian and policy reasons. A court must refrain from "investigating the fairness of the requesting nation's justice system," or the "procedures or treatment which await a surrendered fugitive in the requesting country." *United States v. Kin–Hong,* 110 F.3d 103, 110 (1st Cir.1997). Plaintiff does not allege he presented humanitarian concerns to the Secretary of State.

c. *INHERENT AUTHORITY TO STAY OR DISMISS THIS CASE AS A RELATED PROCEEDING*

 The authority to stay a case is more flexible than the first to file rule:

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. [ ][T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Neither the parties nor the issues must be identical. *Lecor, Inc. v. United States Dist. Ct., Central District of Cal.,* 502 F.2d 104, 105 (9th Cir.1974); *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 864 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). Plaintiff has not here demonstrated jurisdiction or legal justification to stay the Extradition Case. *See Sandhu v. Reno,* 1996 WL 451053 (D.D.C.1996) (improper to collaterally attack extradition because district court had no jurisdiction to enjoin extradition, while plaintiffs pursued asylum petition).

C. *FEDERAL SUBJECT MATTER JURISDICTION*

Federal courts have power to only hear cases authorized by Article III of the Constitution and statutory enactments of Congress under 28 U.S.C. § 1331 or § 1332. *See Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *see also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.") The presumption is that a case lies outside the jurisdiction of the court, *Kokkonen v. Guardian Life Ins. Co. of America,* 114 S.Ct. at 1675; unless Plaintiff proves that jurisdiction exists. *Thornhill Publishing,* 594 F.2d at 733.

 The United States may not be sued without its consent. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A waiver of sovereign immunity "must be unequivocally expressed." *United States v. Nordic Village,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Whether sovereign immunity has been waived depends on the language of a federal statute. *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("in determining the scope of a statute, we first look to its language"). "The Government's consent to be sued must be construed strictly, in favor of the sovereign." *Nordic Village,* 503 U.S. at 33, 112 S.Ct. 1011 (internal quotations and citations omitted).

Barapind alleges federal jurisdiction under 28 U.S.C. § 1331 (Federal Question); § 2201 (Declaratory Judgment); § 2241 (Habeas Corpus); and 5 U.S.C. § 702 (Administrative Procedure Act). The United States responds federal jurisdiction has been removed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA"). Three recent cases bear on this issue: *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*AAADC*"); *Immigration and Naturalization Service v. Aguirre–Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); and *Barahona–Gomez v. Reno,* 167

F.3d 1228 (9th Cir.1999), decided before *AAADC.*

1. *ASYLUM UNDER INTERNATIONAL LAW*

Barapind believes his life is in jeopardy if he is returned to India. He argues the court has jurisdiction over his claims under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (Convention Against Torture),[7] the Attorney General's interpretive guidelines, and the United Nations Protocol Relating to the Status of Refugees (Refugee Protocol).[8] The government rejoins these international treaties and internal procedures do not grant jurisdiction to decide asylum.

■■■■■ The Attorney General's "Interim Guidance on Compliance with Article 3 of the Convention Against Torture" issued April 27, 1998. Plaintiff contends, the interpretive guidelines "recognize that aliens have an absolute right to finally adjudicate an asylum request" and impose responsibility on INS officers to adjudicate asylum applications under the Convention. *Romeiro de Silva v. Smith,* 773 F.2d 1021, 1025 (9th Cir.1985) concludes the 1978 operations instructions are intra-agency guidelines which confer no substantive benefits on aliens, do not have the force and effect of law, and operate "merely for the INS' own convenience." The Attorney General's (BIA) decision to abate the asylum proceedings is unreviewable by the court, as this decision is committed to the Attorney General's discretion by law. *See Hotel and Restaurant Employees Union v. Smith,* 594 F.Supp. 502, 505–10 (D.D.C. 1984), *aff'd,* 846 F.2d 1499, 1510, 1519–20 (D.C.Cir.1988) (Attorney General's decision not to grant extended voluntary departure status for El Salvadoran nationals was not reviewable); *Romeiro de Silva,* 773 F.2d at 1025 (district court lacked

jurisdiction to review an INS district director's decision not to recommend deferred action status for alien).

■■■■■ Treaties made by the United States are the law of the land, *see* U.S.Constitution, Art. VI; but if not implemented by appropriate legislation they do not provide the basis for a private lawsuit unless they are intended to be self-executing. *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774 (D.C.Cir.), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *see also Hawkins v. Comparet– Cassani,* 33 F.Supp.2d 1244 (C.D.Cal. 1999). Whether a treaty in self-executing is an issue for judicial interpretation. *See* Restatement (Third) Foreign Relations Law of the United States, § 111(h)–(j) (1987). The Ninth Circuit applies a four-part test to determine whether a treaty is self executing. *See Islamic Republic of Iran v. Boeing Co.,* 771 F.2d 1279, 1283 (9th Cir.1985):

(1) "the purposes of the treaty and the objectives of its creators," (2) "the existence of domestic procedures and institutions appropriate for direct implementation," (3) "the availability and feasibility of alternative enforcement methods," and (4) "the immediate and long-range social consequences of self- or non-self-execution."

*Id.* (quoting *People of Saipan v. United States Dep't of Interior,* 502 F.2d 90, 97 (9th Cir.1974).) "The first factor [ ] is critical to determine *whether* an executive agreement [or treaty] is self-executing, while the other factors are most relevant to determine *the extent* to which the agreement is self-executing." *Id.; see also Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 373 (7th Cir.1985). If the treaty parties' intent is clear from the

---

**7.** The Convention Against Torture was ratified by Congress October 27, 1990. *See* 135 Cong. Rec. S.17491.

**8.** The Refugee Protocol, 19 U.S.T. 6223–58 incorporates certain provisions of the 1951

Convention Relating to the Status of Refugees, 19 U.S.T. 6259–88. *See INS v. Stevic,* 467 U.S. 407, 416, 104 S.Ct. 2489, 2494, 81 L.Ed.2d 321 (1984); *Haitian Centers Council, Inc. v. McNary,* 969 F.2d 1326, 1344 (2d Cir. 1992).

treaty's language, courts will not inquire into the remaining factors. *Id.*

Article III, § 1 of the Torture Convention provides: "No State Party shall expel, return (*'refouler'*) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Legislative and Executive statements to facilitate Senate ratification of that Convention demonstrate the treaty is not self-executing. *See,* discussion, *Extradition of Cheung,* 968 F.Supp. 791, 803 n. 17 (D.Conn.1997). In his Letter of Submittal to the President, Secretary of State George Schultz included a "Declaration Regarding the Non–Self–Executing Nature of the Convention," which reads in part: "The United States declares that the provisions of Articles 1 through 16 of the Convention are not self-executing." The Senate adopted and incorporated this statement in its Resolution of Advice and Consent to the Ratification of the Convention, 136 Cong.Rec. S17486 (Oct. 27, 1990).

The Torture Convention does not supplant or supercede the specific congressional enactments concerning asylum. Congress enacted a comprehensive scheme governing asylum for an alien in United States custody who fears persecution in his or her native country. *See* 8 U.S.C. § 1158. Congress has not granted jurisdiction to federal courts to hear claims involving the Torture Convention's protective provisions. *See, e.g., Igartua De La Rosa v. United States,* 32 F.3d 8, 10 n. 1 (1st Cir.1994); *Hawkins v. Comparet–Cassani,* 33 F.Supp.2d 1244, 1257 (C.D.Cal. 1999); *White v. Paulsen,* 997 F.Supp. 1380 (E.D.Wash.1998); *In the Matter of Extradition of Cheung,* 968 F.Supp. 791, 803 n. 17 (D.Conn.1997); *Calderon v. Reno,* 39 F.Supp.2d 943, 1998 WL 867413 (N.D.Ill. 1998).

[45] The United States acceded to the Refugee Protocol in 1968, pledging not to "return (*'refouler'*) a refugee in any manner whatsoever" to a place where he or she would face political persecution.[9] The Attorney General implemented regulations to comply with its terms. *INS v. Stevic,* 467 U.S. 407, 428–430, n. 22, 104 S.Ct. 2489, 2494–2495, 2496, 81 L.Ed.2d 321 (1984). In 1980, Congress amended the immigration law to reflect the Refugee Protocol's directives. *See INS v. Doherty,* 502 U.S. 314, 331, 112 S.Ct. 719, 729, 116 L.Ed.2d 823 (1992) (United States law was amended to conform to Article 33, so "the nondiscretionary duty imposed by 8 U.S.C. § 1253(h) [withholding of deportation] parallels the United States' mandatory non-refoulement obligations under Article 33.1"); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 429, 436–437, 440, 107 S.Ct. 1207, 1212, 1215–1216, 1217–1218, 94 L.Ed.2d 434 (1987).

The Refugee Protocol is not self-executing, nor does it confer any rights beyond those granted by implementing domestic legislation. *See Cuban American Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1426 n. 13 (11th Cir.), *cert. denied, sub nom., Haitian Refugee Center, Inc. v. Christopher,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995) (citing *Haitian Refugee Ctr., Inc. v. Baker,* 949 F.2d 1109, 1110 (11th Cir.) (per curiam), *cert. denied,* 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992)); *see also Ming v. Marks,* 505 F.2d 1170, 1171 n. 1 (2d Cir.1974) (per curiam), *cert. denied,* 421 U.S. 911, 95 S.Ct. 1564, 43 L.Ed.2d 776 (1975) (history of United States accession to Protocol and Protocol's relationship to 1951 Convention clarify the Protocol does not alter or enlarge the effect of existing immigration laws already embracing principles of the Protocol).

9. Article 33.1 of the Refugee Convention 19 U.S.T. 6276, states:

> No Contracting State shall expel or return (*'refouler'*) a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

*Stevic* held "Article 33 of the Convention imposes an absolute obligation upon the United States to conform United States domestic law to the Protocol." 469 U.S. at 407, 409, 105 S.Ct. 830. Domestic legislation specifically implements Article 33 of the Refugee Protocol. *See* 8 U.S.C. § 1101(a)(42)(A) (definition of "refugee" adopted from Protocol); § 1158(a) (asylum), § 1253(h) (withholding of deportation). The Refugee Protocol affords petitioner no rights beyond the INA and its amendments.

### 2. TRADITIONAL SUPREME COURT JURISPRUDENCE REGARDING THE FEDERAL COURTS' JURISDICTION IN ALIEN CASES

 Plaintiff contends that historically, *see, e.g., Shaughnessy v. Pedreiro,* 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955), aliens may adjudicate their INA rights by petition for habeas corpus or an action for declaratory relief.[10] But see *LoBue v. Christopher,* 82 F.3d at 1085 (no jurisdiction for declaratory relief claim). Plaintiff argues the district court retains jurisdiction to review disputed agency action, even action that does not result in a final order under the Administrative Procedure Act. However, the judiciary is not the ultimate arbiter in immigration disputes over exclusion-asylum/withholding.

 "Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (citations and quotation marks omitted). The power to expel or exclude aliens "is a fundamental sovereign attribute exercised by the Government's political departments, largely immune from judicial control." *Id.*

(quoting *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953)). "[W]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950). Judicial deference to the Executive Branch is especially appropriate in the immigration context where officials "exercise especially sensitive political functions that implicate questions of foreign relations." *Aguirre–Aguirre,* 119 S.Ct. at 1444 (citing *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)).

 "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert v. United States Attorney General,* 988 F.2d 1437, 1440 (5th Cir.1993), as amended, 997 F.2d 1122, 1123 (5th Cir.1993). Because such aliens are not considered to be "within" the United States, but rather "at" the border, courts have long recognized that such aliens have "no constitutional right[s]" with respect to their applications for admission. *See Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Kleindienst v. Mandel,* 408 U.S. 753, 761, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *see also Correa v. Thornburgh,* 901 F.2d 1166, 1171 n. 5 (2d Cir.1990) (apart from "protections against gross physical abuse," aliens seeking initial admission are entitled to no constitutional due process protection); *Ukrainian–American Bar Association v. Baker,* 893 F.2d 1374, 1382 (D.C.Cir.1990) ("an alien

**10.** In *Shaughnessy,* the Supreme Court found aliens could seek judicial review in both appeals and district courts. The Immigration and Nationality Act of 1961, Sept. 26, 1961, Pub.L. No. 87–301, § 5, 75 Stat. 651; gives the courts of appeal "sole and exclusive" power to review deportation orders. Congress eliminated APA review by declaratory judgment actions in the district courts. See *Foti v. INS,* 375 U.S. 217, 231, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) ("[O]ur decision in this case [that the court of appeals has initial, exclusive jurisdiction to review denial of suspension of deportation] in no way impairs the preservation and availability of habeas corpus relief.").

seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application"); *Marincas v. Lewis,* 92 F.3d 195, 203 (3d Cir.1996) (inadmissible "asylum applicants do not have constitutional due process protections," but only those procedural rights granted by Congress); *Jean v. Nelson,* 727 F.2d 957, 981–82, 984 (11th Cir.1984) (inadmissible Haitians had "no constitutional rights with respect to their applications for admission, asylum or parole"), aff'd. on other grounds, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

## 3. *FEDERAL COURT REVIEW OF BIA ASYLUM DECISIONS*

Before the IIRIRA, an alien arriving at a United States port of entry was required to establish to an immigration inspector's satisfaction the alien was entitled to enter the United States.[11] If an immigration inspector was doubtful of an alien's right to enter, the inspector referred the alien to a process known as "secondary inspection." Secondary inspection determined whether an alien is inadmissible because he or she either possesses fraudulent documentation 8 U.S.C. § 1182(a)(6)(C) or no valid documentation. 8 U.S.C. § 1182(a)(7). During secondary inspection, an immigration inspector briefly interviews the alien. The alien could voluntarily withdraw the application for admission. If the alien chose not to withdraw the admission application, the alien was entitled to an exclusion hearing before an immigration judge, a decisionmaker independent of the INS. The alien has a right to counsel and to a list of persons providing free legal services. At the exclusion hearing, the alien was allowed to present evidence and to challenge the government's evidence. Foreign language interpretation was provided by the government. The alien was entitled to appeal an adverse decision of the immigration judge to the BIA.

At the time in 1994 when Barapind filed his habeas petition, judicial review of INS orders was governed by 8 U.S.C. § 1105a, which provided, *inter alia,* as follows:

(a) Exclusiveness of procedure

The procedure prescribed by, and all the provisions of Chapter 158 of Title 28 shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or pursuant to section 1252a of this title or comparable provisions of any prior Act, except that

(10) Habeas corpus

any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

(b) Limitation of certain aliens to habeas corpus proceedings

Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise.

. . .

(2) No court shall have jurisdiction to review any issue other than an issue described in paragraph (1).

8 U.S.C. § 1105a, repealed by IIRIRA, P.L. 104–208, Div. C, Title III, Subtitle A, § 306(b), 110 Stat. 3009–612 (Sept. 30, 1996).

---

**11.** Under the INA, an alien, *i.e.,* a person not a citizen or national of the United States, is seeking "entry" or "admission" to the United States if he or she "arrives" at a port of entry, such as an airport, and has not yet been admitted by an immigration officer. *See* 8 U.S.C. § 1225(a)(1). Upon arrival, an alien is subject to "primary inspection" at which an immigration officer examines the alien's documents, runs basic "lookout queries, and ask[s] pertinent questions to determine admissibility and issue relevant entry documents." 62 Fed.Reg. 10312, 10318 (1997).

The parties agree the BIA's exclusion order denying asylum/withholding was a final order subject to habeas review. In the pre–1996 regime, aliens in exclusion proceedings were limited to habeas corpus review in the district court, as prescribed by former INA § 106(b). The Ninth Circuit's remand order vacated the exclusion-asylum decision. There is no final exclusion-asylum order.

The IIRIRA substantially amended the Immigration and Nationality Act of 1952, by *inter alia*, establishing a new summary removal process to adjudicate claims of aliens who arrive in the United States without proper documentation. Under the IIRIRA, the court's jurisdiction to review denial of removal is constrained:

> Judicial review of any determination made under section 235(b)(1) is available in habeas corpus proceedings, but shall be limited to determinations of—(A) whether the petitioner is an alien, (B) whether the petitioner was .ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207 (9 U.S.C. § 1157), or has been granted asylum under section 208 (8 U.S.C. § 1158), such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 235(b)(1)(C).

8 U.S.C. § 1252(e)(2).

The IIRIRA amendments were effective April 1, 1997, *see INS v. Yang*, 519 U.S. 26, n. 1, 117 S.Ct. 350, 352 n. 1, 136 L.Ed.2d 288 (1996). Section 1252(g) limits court review in all cases "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under the INA." Since April 1, 1997, no court has jurisdiction to review an order of removal except as provided by newly amended 8 U.S.C. § 1252.[12] Further,

> in determining whether an alien has been ordered removed under section 235(b)(1), the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

8 U.S.C. § 1252(e)(5). The habeas court "may order no remedy or relief other than to require that the petitioner be provided a [regular, nonexpedited removal] hearing in accordance with [INA] section 240." 8 U.S.C. § 1252(e)(4),

### a. *RENO V. AAADC REMOVES JURISDICTION OVER THE DECLARATORY RELIEF CLAIM*

*AAADC* interprets the scope and intent of amended section 1252(g).[13] 119 S.Ct. 936. *AAADC* considered 1987 deportation proceedings against eight members of the Popular Front for the Liberation of Palestine, an alleged international terrorist organization. The aliens' complaint challenged the constitutionality of the anti-communism act and the Attorney General's deportation decision based on their affiliation with a politically unpopular group. INS dropped advocacy of communism charges against six aliens, who were temporary residents, and continued deportation proceedings for technical violations of the INA, *inter alia*, overstaying a visa

---

12. Congress enacted transitional rules which governed immigration proceedings initiated by the INS before the IIRIRA's effective date of April 1, 1997, in which a final order of deportation or exclusion was filed after October 30, 1996. The transitional rules do not apply to Petitioner because no final order of exclusion was filed during the transitional period.

13. IIRIRA section 306(a), ("242(g)") states:
 Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.
 8 U.S.C. § 1252(g) (1998).

and failure to maintain student status. The two permanent resident aliens, were prosecuted under the anti-communism act, authorizing deportation of aliens with membership in organizations advocating unlawful assault or killing of a government officer.

The aliens' suit claimed selective enforcement of immigration laws in violation of free speech and due process rights. The district court preliminarily enjoined deportation of the six temporary residents selective enforcement and First Amendment grounds. The Ninth Circuit affirmed, 70 F.3d 1045 (9th Cir.1995); but reversed denial of relief to the permanent residents. The IIRIRA was enacted. The government moved to dismiss for lack of jurisdiction over the selective enforcement claim. The district and appeals courts denied the motion. 119 F.3d 1367 (9th Cir. 1997), reh'g denied (en banc), 132 F.3d 531 (9th Cir.1997). The Supreme Court granted certiorari and reversed.

The Supreme Court found 242(g) applied to a suit pending as of 242(g)'s enactment date and construed § 242(g) narrowly to govern "three discreet actions" by the Attorney General: her "decision or action" to "[1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders:"

> There are of course many other decisions or actions that may be part of the deportation process—such as the decision to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order. [¶] It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

119 S.Ct. at 943.

The Supreme Court found each discrete act "represent[s] the initiation or prosecution of various stages in the deportation process. At each stage, the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted, the INS had been engaging in a regular practice, (which had come to be known as deferred action) of exercising that discretion for humanitarian reasons or simply for its own convenience." 119 S.Ct. at 943. Here, the Attorney General acted within her discretion to cease prosecution to adjudicate Barapind's exclusion-asylum/withholding proceedings.

The Court decided § 242(g) is designed to protect "deferred action"[14] decisions and "similar discretional determinations, providing that if they are reviewable at all, they at least will not be made the basis for separate rounds of judicial intervention outside the streamlined process that Congress has designed." 119 S.Ct. at 944. Section 242(g)'s focus is to eliminate judicial constraints on prosecutorial discretion by focusing on administrative stages where attacks are most likely to occur. *Id.*

Section 242(g), is not as plaintiff contends, limited to "final orders." The term "final order" is not used in § 242(g) although the phrase is used in other subsections of § 242, *i.e.*, § 242(a)(1) & (2), (b), (c), (d), and (e), demonstrating Congress knew how to use the term when it so intended. *Abboud v. INS,* 140 F.3d 843 (9th Cir.1998), cited by plaintiff, does not discuss § 242(g). This case, filed after October 30, 1997, is subject to the IIRIRA.

There is no question that plaintiff seeks to enforce "his right to the final adjudication of his application under the INA." Complaint ¶ 114. This is a direct challenge to the Attorney General's discretion to "adjudicate" the exclusion-asylum proceeding.

### b. *NINTH CIRCUIT DECISIONS: WALTERS V. RENO AND BARAHONA–GOMEZ V. RENO*

The Ninth Circuit concluded that § 242(g) does not bar habeas jurisdiction

---

**14.** "Deferred action" is an "exercise in administrative discretion, developed without express statutory authorization." Quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, IMMIGRATION LAW AND PROCEDURE, § 72.03[2][h] (1998).

in *Walters v. Reno*, 145 F.3d 1032 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999) (class of aliens made due process challenge to adequacy of notice they received of deportation for document fraud). *Walters* differentiated a due process challenge from the three 242(g) categories of unreviewable decisions: "[Plaintiffs'] claims do not arise from a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien,' but instead constitute 'general collateral challenges to unconstitutional practices and policies used by the agency.'" *Id.* at 1052 (footnote and citation omitted). *Walters* is distinguishable, it is a collateral challenge to practices and does not address a merits challenge to adjudication of deportation claims. If *Walters* so holds, it has been overruled by *AAADC*. The Ninth Circuit's narrow interpretation in *Walters* of § 242(g) resembles the Supreme Court's reading of the statute in *AAADC*.

*Barahona–Gomez v. Reno*, 167 F.3d 1228 (9th Cir.1999), addressed lawfulness of an INA amendment to limit the number of annual deportation suspensions, as applied to class-plaintiffs who were in deportation proceedings. *Barahona–Gomez* is distinguishable if it is read as a collateral challenge to an agency rule and practice case. If it purports to reach the issue of jurisdiction to adjudicate the merits of individual deportation proceedings it is overruled by AAADC. Neither case is authority for finding jurisdiction here.

### c. *Aguirre–Aguirre*

*INS v. Aguirre–Aguirre*, 526 U.S. 415, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), reviewed applicability of pre- and post-IIRIRA rules to exclusion and deportation. There, plaintiff sought judicial review of a BIA order, final before April 1, 1997, denying withholding of deportation. Here, the asylum proceeding was remanded for readjudication July 17, 1997, after the IIRIRA was effective. IRA §§ 306(c) and 309 expressly provide for retroactive application of § 242(g). It is the October 30,

1997, BIA stay of asylum proceedings that plaintiff seeks to overturn to compel adjudication, not the merits decision on asylum. *Aguirre–Aguirre* is distinguishable. Section 242(g) applies to this February 17, 1998 case.

### d. THE CHALLENGED DECISION IS ONE TO "ADJUDICATE"

■ Barapind argues notwithstanding the IIRIRA, the BIA cannot refuse to adjudicate his asylum application. Defendants maintain Barapind is an admittedly excludable alien whose remanded asylum application has not been finally adjudicated. The Attorney General may exercise executive discretion to cease further adjudication of an exclusion proceeding in which the asylum/ withholding application is raised. Barapind's present claims challenge the Attorney General's discretionary determination to cease proceedings against him and not to adjudicate his exclusion-asylum/withholding case. He demands the Attorney General (BIA) first complete adjudication of the removal-asylum proceeding before the Extradition case is decided. AAADC abrogates general jurisdiction under 28 U.S.C. § 1331 to review the attorney general's decision to not pursue adjudication in the BIA exclusion-asylum proceeding.

### e. DOES THE IIRIRA REMOVE HABEAS CORPUS JURISDICTION UNDER 28 U.S.C. § 2241?

■ The IIRIRA does not mention habeas corpus relief for constitutional violations in exclusion-asylum proceedings. *AAADC* expresses no opinion on habeas review. The circuits are split whether IIRIRA repeals habeas jurisdiction under 28 U.S.C. § 2241. *AAADC*, 119 S.Ct. at 942 & n. 7.

A majority of courts have concluded district courts retain jurisdiction under § 2241 and the Suspension Clause, when the habeas petitioner alleges substantial constitutional violations. *See, e.g., Henderson v. INS*, 157 F.3d at 120; *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir.),

*cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Williams v. INS,* 114 F.3d 82, 84 (5th Cir.1997). The Seventh Circuit found IIRIRA abolishes § 2241 review, leaving only the Suspension Clause. *See Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.), *cert. denied, sub nom., Katsoulis v. INS,* 522 U.S. 1027, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).

The Ninth Circuit decided district courts have no habeas jurisdiction under § 2241 or the Suspension Clause after IIRIRA. *See, e.g., Hose v. INS,* 141 F.3d 932, 935 (9th Cir.1998):

> [e]xcept as provided in [8 U.S.C. § 1252], federal courts are divested of all jurisdiction to hear any claim by any alien involving an immigration proceeding. . . . Section 1252 does not give the district court jurisdiction to hear Hose's habeas petition. Not having been granted jurisdiction under section 1252, that jurisdiction is removed just as the statute says it is.

*Hose,* 141 F.3d at 935, vacated and reh'g en banc granted, 161 F.3d 1225 (9th Cir. 1998) (petitioner failed to demonstrate how she lacked effective direct review of her claims, no violation of Suspension Clause). *Id.* at 936. The Ninth Circuit withheld decision on "whether the statute violates the Suspension Clause as to aliens who then have no avenue of judicial review." *Hose,* 141 F.3d at 936 n. 3.

*Magana–Pizano* vacated *Hose,* finding "[t]he district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy." 152 F.3d at 1216. The Supreme Court vacated and remanded. —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). Whether habeas jurisdiction survives the IIRIRA amendments to the INA is now undecided in the

Ninth Circuit. The Supreme Court denied certiorari in two decisions from other circuits squarely holding habeas jurisdiction is available under 28 U.S.C. § 2241, after the IIRIRA. *See Goncalves v. Reno,* 144 F.3d 110,[15] *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS,* 157 F.3d 106, 118–22 (2d Cir.), *cert. denied, sub nom., Reno v. Navas,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999). Congress has not explicitly repealed or restricted habeas jurisdiction under § 2241 by enactment of the IIRIRA; *Felker v. Turpin,* 518 U.S. 651, 661, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). District courts retain § 2241 habeas jurisdiction to address substantial constitutional claims after the IIRIRA.

■ Here, the complained of executive decisions all involve the exercise of the Attorney General's discretion, which Congress in the IIRIRA has insulated from judicial review. *AAADC,* 119 S.Ct. at 945 ("Of course many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation.") (italics deleted) (citing several subsections of § 242). There is no purpose for habeas review of a vacated exclusion-asylum/withholding decision.

### 4. *ARTICLE III JURISDICTION TO COMPLY WITH NINTH CIRCUIT REMAND ORDER*

■ Barapind argues the BIA cannot abate removal proceedings to frustrate the Ninth Circuit's remand order to readjudicate his asylum request. The United States rejoins no Article III violation can exist, because judicial power no longer extends to review the Attorney General's

---

**15.** Goncalves, a 25–year permanent resident alien subject to a deportation order for criminal convictions applied for and was denied discretionary relief under former INA § 212(c), 8 U.S.C. § 1182(c), because the AEDPA made him ineligible. Id. AEDPA § 440(d) greatly expanded the category of criminal convictions rendering an alien ineligible to apply for INA § 212(c) relief. Id.

Goncalves filed a § 2241 habeas petition, instead of seeking direct review in the court of appeals. Id. at 115. The First Circuit held 2241 habeas jurisdiction existed which encompassed statutory construction issues and constitutional claims. The AEDPA § 440(d) did not apply retroactively to Goncalves. Id. at 123.

decision to abate removal proceedings. *In re Ma*, Interim Decision 3351, 1998 WL 299480 (BIA 1998) (abating deportation proceedings pending resolution by district court of legal question regarding visa petition); *Matter of Tinajero*, 17 I & N Dec. 424, 1980 WL 121909 (BIA 1984) (holding deportation in abeyance pending collateral proceedings to expunge criminal conviction).

Barapind's appeal was pending after the IIRIRA was effective. As in *Aguirre–Aguirre*, the IIRIRA did not then apply because the BIA decision was final before the effective dates of the AEDPA (September 30, 1996) and IIRIRA (April 1, 1997). The asylum proceeding is in abeyance, there is nothing to readjudicate. Section 242(g) removes judicial constraints from review of prosecutorial discretion to institute or adjudicate proceedings. *AAADC*, 119 S.Ct. at 944, n. 9. The Attorney General's "deferred action" decision, if reviewable at all, will not be made the basis for separate rounds of judicial intervention outside the streamlined process that Congress designed. *Id.* at 944. Although no "deferred action" decision is here at issue; there is no substantive difference between "deferred action" and the Attorney General's decision to seek to stay adjudication of a deportation-asylum proceeding. The IIRIRA explicitly, in unambiguous language, precludes court review of an agency decision to institute or adjudicate an immigration proceeding. The BIA stay order directly concerns adjudication.[16] Section 242(g) reaches every adjudicative proceeding in the deportation process.

The remand order does not create federal subject matter jurisdiction over this case after Congress chose to eliminate federal court review of executive decisions to cease to adjudicate claims in removal proceedings. This legislative choice is not subject to judicial repeal. The IIRIRA's mandate is consistent with the long-established administrative law principle that courts should not intervene in an ongoing administrative agency process to reach potential constitutional issues. Congress has broad latitude to regulate the mode and timing of judicial review of administrative agency decisions, even where constitutional claims are involved.

### 5. THE CODE OF FEDERAL REGULATIONS DO NOT CREATE JURISDICTION

■■ There is no absolute constitutional or statutory right to asylum, which may be granted through the discretion of the Attorney General, pursuant to her "power to admit or exclude aliens [ ][,] a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). Administrative asylum is governed by 8 C.F.R. § 208.4. In this case, Plaintiff's asylum application was made in the exclusion proceedings which started in 1993.

Plaintiff contends once removal proceedings have begun, an alien must be advised of the right to apply for asylum, § 240.33; to retain counsel, § 240.11(c)(1)(iii); to an evidentiary hearing, § 240.43(3); to cross-examine the governments' witnesses, § 240.32(a); and to granting or denial of the asylum application with a statement of reasons therefor. §§ 208.14(a); 240.33(d); 3.37(b). All of these rights have been afforded. Barapind asserts asylum regulations afford him the independent right to final adjudication of his asylum application and that no discretion can be exercised to prevent issuance of a final order with statement of reasons.

**16.** Plaintiff's counsel argued at the hearing the INA's asylum provisions do not require an ongoing exclusion or deportation proceeding for an alien to seek asylum. Counsel stated that an alien's right to seek asylum pursuant to 8 U.S.C. § 1158(a) may be initiated by the alien. However, plaintiff has not done so. Counsel argues it is inconsistent to allow the BIA to abate an asylum hearing without review (§ 242(g)) where the statute elsewhere provides that the courts of appeal may review final adjudication of an asylum application, (§ 242(a)(2)(B).) This ignores the Attorney General's exercise of discretion not to seek adjudication.

Although Barapind claims a "categorical right" to apply for asylum, any right he seeks to enforce under 8 C.F.R. § 208.2, is governed by the IIRIRA, which these administrative regulations implement. Administrative asylum does not trump the court's authority to hear and decide an extradition request. Plaintiff argues the "humanitarian concerns" he advances must be first heard and decided by a court. Congress has reserved consideration of humanitarian concerns in extradition matters to the Executive, not the Judiciary. 18 U.S.C. §§ 3184, 3186. *See also In the Matter of the Requested Extradition of Smyth,* 61 F.3d 711, 722 (9th Cir.1995), *Sindona v. Grant,* 619 F.2d 167, 174 (2d Cir.1980). There is no independent jurisdiction for administrative asylum that is not subject to the IIRIRA.

6. *FEDERAL QUESTION JURISDICTION: 28 U.S.C. § 1331*

Plaintiff maintains his asylum claim raises an independent federal question. Prior to the IIRIRA, courts permitted review of general allegations of procedural illegality or unconstitutional conduct in the administration of the INA as a collateral challenge under general federal question jurisdiction. *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 494, 111 S.Ct. 888, 897, 112 L.Ed.2d 1005 (1991), upheld § 1331 jurisdiction to challenge the INS's practices and procedures to administer the Special Agricultural Worker program. The INS precluded an alien from making an adequate record for appeal. *Id.* at 487–88, 111 S.Ct. 888 (no opportunity to challenge adverse evidence or to call witnesses; incompetent translation; failure to transcribe recordings of office interviews). *McNary* found that 8 U.S.C. § 1160e did not bar "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications," under § 1331 jurisdiction. 498 U.S. at 492, 111 S.Ct. 888. *See also, El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746–47 (9th Cir.1991) (§ 1331 jurisdiction proper to challenge systematic failure to obtain translation of immigration proceedings); *Montes v. Thornburgh,* 919 F.2d 531, 535 (9th Cir.1990) (§ 1331 jurisdiction proper to challenge actions of Immigration Judge who refused to accept documents not in conformity with judge's personal filing requirements); *Jean v. Nelson,* 727 F.2d 957, 979–80 (11th Cir.1984) (§ 1331 jurisdiction proper to challenge INS failure to give notice of right to apply for asylum), aff'd. with opinion, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). In these cases, the challenged INS practices left the administrative record of exclusion proceedings either incomplete or unreliable.

Second, courts have exercised § 1331 jurisdiction where the claims are not amenable to individual habeas review, either because the claims would be moot by the time of habeas review, *see, e.g., Jean,* 472 U.S. at 846, 105 S.Ct. at 2993; or because the nature of the challenge was such that it could not be dealt with adequately in an individual alien's administrative or habeas proceeding, *see, e.g., McNary,* 498 U.S. at 497, 111 S.Ct. at 898–99.

▮ Notwithstanding Plaintiff's claim that if he is extradited, his asylum/withholding claims will be mooted, the IIRIRA significantly alters the legal landscape. Congress has removed from judicial review major aspects of exclusion-asylum-withholding proceedings. The IIRIRA is intended to further "streamline" judicial review of removal decisions. Congress has withheld Judicial authority to hear or decide challenges to the Executive's exercise of discretion to initiate, adjudicate, or execute orders in exclusion proceedings. To invoke general federal question jurisdiction to permit judicial review of the BIA's decision to stay or not to adjudicate plaintiff's exclusion-asylum case would abrogate § 242(g). A precisely drawn specific statute controls over a general statute without regard to priority of enactment. *Bulova Watch Company v. United States,* 365 U.S. 753, 757, 81 S.Ct. 864, 869, 6 L.Ed.2d 72 (1961); *Thiess v. Witt,* 100 F.3d 915, 919 (Fed.Cir.1996); *Radzanower v. Touche*

*Ross & Co.*, 426 U.S. 148, 153–54, 96 S.Ct. 1989, 1992–93, 48 L.Ed.2d 540 (1976) (venue is controlled by a narrow provision in Title 12, not by a broad provision in Title 15). No federal question (§ 1331) claim independent of the IIRIRA can be stated.

#### D. *ADMINISTRATIVE PROCEDURE ACT: 5 U.S.C. § 702*

■ As a general rule, agency action is presumed to be subject to judicial review, absent specific Congressional direction to the contrary. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991) ("well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"). "immigration proceedings are not governed by the APA." There is no right to assert an APA claim. *Ardestani v. INS*, 502 U.S. 129, 133, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *Campos v. INS*, 62 F.3d 311, 314 (9th Cir.1995). The provisions of the INA supplant the APA in deportation proceedings. *Ardestani*, 502 U.S. at 133, 112 S.Ct. 515.

■ Plaintiff argues that his alleged right to asylum is independent of the deportation proceedings. The second line of cases relied on by plaintiff are APA cases that permit judicial review of immigration issues that do not arise in an exclusion or deportation proceeding. Judicial review of administrative action exists for which there is no other adequate remedy in court, *see* 5 U.S.C. § 704, unless: "(1) the statute[ ] precludes judicial review; or (2) the agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(1), (2); *see also, Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967); *McNary*, 498 U.S. 479, 111 S.Ct. 888; *Felker*, 518 U.S. 651, 116 S.Ct. 2333; *State of North Dakota ex. rel. Board of University and School Lands v. Yeutter*, 914 F.2d 1031 (8th Cir.1990). Here, the IIRIRA precludes judicial review, as there is no pending asylum proceeding.

Even assuming *arguendo* the IIRIRA does not preclude the relief plaintiff seeks, the determinative factor is whether the agency action in question is "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). The exception to judicial review set forth in 5 U.S.C. § 701(a)(2) is a "very narrow" one and "is applicable only in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)." *Chaney*, 470 U.S. at 830, 105 S.Ct. 1649 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *see also Webster v. Doe*, 486 U.S. 592, 599–601, 108 S.Ct. 2047, 2051–53, 100 L.Ed.2d 632 (1988); *Yeutter*, 914 F.2d at 1034–35. Plaintiff's suit to compel agency action, to readjudicate the exclusion-asylum-withholding proceedings before the BIA, is foreclosed by the IIRIRA. *Campos v. INS*, 62 F.3d at 314. No claim for APA review is stated.

#### E. *ALL WRITS ACT: 28 U.S.C. § 1651*

■ No gaps in the interstices of federal judicial power need to be filled to prevent thwarting the otherwise proper exercise of federal court authority. *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 41, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). The IIRIRA, a directly controlling federal statute, specifically addresses a federal court's power over exclusion-asylum proceedings. The All Writs Act cannot be invoked.

#### F. *EQUITABLE DOCTRINES OF LACHES OR ESTOPPEL*

Barapind affirmatively claims laches and equitable estoppel to collaterally attack the United States' prosecution of the Extradition Case; *i.e.*, the Secretary of State and Attorney General cannot prosecute India's extradition case because the Attorney General unreasonably delayed filing the Extradition Case "until after deportation efforts were likely to fail." Plaintiff alleges the Attorney General engaged in misconduct by not immediately acting on India's diplomatic letter when it was received by the

United States in September 1994, and there is no explanation for the 34 month delay. The government rejoins that neither laches nor estoppel can prevent the United States from extraditing plaintiff.[17]

A person seeking to estop the government must establish (1) the traditional elements of estoppel and (2) that the government conduct challenged amounts to "affirmative misconduct." *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *see also INS v. Miranda*, 459 U.S. 14, 18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982) (per curiam). The standard for estopping the government is stringent because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases. *Id.* The affirmative misconduct requirement is considered first. *Miranda*, 459 U.S. at 17, 103 S.Ct. 281 (citing *INS v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam), and *Montana v. Kennedy*, 366 U.S. 308, 314–15, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961)).[18]

Here, Barapind does not allege an action or promise by the United States or the government of India on which he detrimentally relied. *See, e.g., United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir.) (Detrimental reliance on government's promise of terms in plea bargaining), *cert. denied*, 507 U.S. 997, 113 S.Ct. 1613, 123 L.Ed.2d 174 (1993); *Sun Il Yoo v. INS*, 534 F.2d 1325 (9th Cir.1976) (conduct of INS estopped government from denying petitioner benefit of precertification). From the face of the complaint, Barapind has never entered the United States; has never been promised he would not be deported; or that he would be granted asylum; or that he would not be extradited. It is operation of the judicial process that has caused delay. The facts alleged do not state a claim for equitable estoppel in this case.

Barapind urges the application of laches to bar the Extradition Complaint. *See* Compl. ¶¶ 105–110, 125–130. He alleges the Extradition Case was based on "execution of the diplomatic note prepared by the Embassy of India formally requesting the extradition of Mr. Barapind [ ] filed with the Department of State on November 29, 1994. . . ." Compl. ¶ 106. The Extradition Complaint, filed September 18, 1997, "contained no documents, papers or evidence prepared or collected after December 4, 1994." Compl. ¶ 108.

The defense of laches requires a showing of inexcusable delay by the party bringing suit and prejudice to the party asserting laches. *See Mission Indians v. American Mgmt. & Amusement, Inc.*, 840 F.2d 1394 (9th Cir.1987). Whether the passage of 34 months between receipt of extradition documents from a foreign nation and the filing of the request in the district court constitutes "inexcusable delay" may be asserted by plaintiff as a defense in the Extradition Case, not in this collateral action.[19] Laches may be consid-

---

**17.** The Supreme Court has not accepted that the government may not be estopped:

[W]e are hesitant . . . to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.

*Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (emphasis in original).

**18.** *Miranda* held negligent delay by an agency resulting in the loss of immigration status, absent evidence the delay was "unwarrant-ed," is not affirmative misconduct. 459 U.S. at 18–19, 103 S.Ct. 281. In *Montana v. Kennedy*, a government official's misrepresentations to petitioner's mother that she could not return to the United States from abroad because she was pregnant, resulting in petitioner being born outside of the United States, fell "far short" of the misconduct required to justify estoppel against the government. Petitioner's foreign birth was used by the government to deny her United States' citizenship. 366 U.S. at 314–15, 81 S.Ct. 1336.

**19.** In domestic criminal prosecutions, the executive, not the judiciary, is vested with the sole discretion and authority of determining

ered under Article 5 of the 1931 Treaty, which provides in part:

> extradition shall not take place if, subsequent to the commission of the crime or offense or the institution of penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

47 Stat. at 2124. Plaintiff has not alleged prejudice from the 34–month delay. Plaintiff alleges the Attorney General's "unjustified" delay in filing the Extradition Complaint "resulted in Mr. Barapind filing and seeking the adjudication of his application for asylum and withholding of deportation." Cpt. ¶ 127. Barapind's admittedly illegal attempted entry resulted in his applications. The prejudice required to support laches must be such that the party suffering from the delay can demonstrate a change in position in reliance on the opposing party's failure to bring a claim. *See Olegario v. United States,* 629 F.2d 204, 222 (2d Cir.), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). Here, the plaintiff shows no prejudice. Plaintiff never lawfully entered the United States and, although detained by the Attorney General, has not yet "crossed" a United States border. Plaintiff has no right to enter the United States. It is doubtful laches applies. *See West Los Angeles Institute for Cancer Research v. Mayer,* 366 F.2d 220 (9th Cir.) (mere lapse of time does not constitute laches); *cert. denied,* 385 U.S. 1010, 87 S.Ct. 718, 17 L.Ed.2d 548 (1967). Any laches claim is only assertable in the Extradition Case.

## VI. *CONCLUSION*

As the judge in the Smyth case appropriately observed, the district court is not one of "supreme equity" in immigration

---

whether to prosecute a person for violation of United States law. *See United States v. Nance,* 962 F.2d 860, 865 (9th Cir.1992). The court cannot inquire into a prosecutor's charging decision without violating separation of powers. *United States v. Redondo–Lemos,* 955 F.2d 1296, 1300 (9th Cir.1992).

proceedings. It is the Executive through the Secretary of State, not a court, that Congress has empowered to evaluate humanitarian concerns. This is a case where plaintiff seeks to dictate the order of proceedings, what evidence may be considered, and the forum to decide plaintiff's claims. Congress has removed federal court jurisdiction over the Attorney General's discretion to institute or seek to adjudicate removal proceedings. There are alternative forums and remedies that protect the rights plaintiff asserts. Plaintiff's complaint is DISMISSED for lack of subject matter jurisdiction and failure to state a claim. No reason appears to require leave to amend.

Counsel for defendants shall submit an order conforming to this decision within five (5) days following date of service.

SO ORDERED.

---

"[A] prosecutor's charging decision cannot be judicially reviewed absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Davis,* 36 F.3d 1424, 1432 (9th Cir.1994); *United States v. Wayte,* 710 F.2d 1385, 1387 (9th Cir.1983).