**Imran Rashid AKHTAR, Petitioner,**

v.

**Janet RENO, Attorney General of the United States, Edward McElroy, New York District Director for Immigration & Naturalization Service, Charles Mule, Facility Director of the Federal Detention Center, Batavia, New York, John J. Ingham, District Director for the Buffalo District, Immigration & Naturalization Service, Respondents.**

**No. 00 CIV. 4760(VM).**

United States District Court, S.D. New York.

Dec. 4, 2000.

---

Jorge Guttlein, Aranda & Guttlein, New York City, for Petitioner.

Meredith E. Kotler, U.S. Attorney, New York City, for Respondents.

## DECISION AND ORDER

MARRERO, District Judge.

Imran Rashid Akhtar ("Akhtar"), detained by the Immigration and Naturalization Service ("INS" or "the Government") at the Buffalo Federal Detention Center in Batavia, New York, petitions for a writ of habeas corpus under 28 U.S.C. § 2241 challenging an order of deportation entered against him by the Bureau of Immi-

gration Appeals ("BIA") that affirmed a decision by the immigration judge ("IJ"). For the following reasons, the petition is denied.

## BACKGROUND

Akhtar, a 29 year old Pakistani native and citizen, entered the United States in 1979 as a lawful permanent resident. Return to the Petition for a Writ of Habeas Corpus, ex. A (Certified Administrative Record A35 542 224)("A") 213, 315, 400. In 1990, Akhtar pleaded guilty in Schenectady County to attempted drug possession, and was later sentenced to one to three years imprisonment.

In October 1994, based on the 1990 felony narcotics conviction, the INS initiated deportation proceedings against Akhtar under the Immigration and Nationality Act ("INA"), as amended, §§ 241(a)(2)(A)(iii), (B)(i) (now renumbered as INA §§ 237(a)(2)(A)(iii), B(i)), codified at 8 U.S.C. §§ 1251(a)(2)(A) (iii),(B)(i)(1994).[1] (A 566–72). In June 1995, a deportation hearing commenced before an IJ in Louisiana but was adjourned so that Akhtar could retain counsel. (A 504). Shortly thereafter, venue of Akhtar's hearing was transferred to New York City and resumed in March 1996. (A 507, 543–45). Akhtar conceded his deportability as charged by the INS, but requested time to prepare a § 212(c) application for waiver of deportation.[2] (A 509). Meanwhile, in September 1995, Akhtar was arrested again and charged with criminal sale of a controlled substance in the third degree. Akhtar's § 212(c) application was due by June 7, 1996. Instead, on that very day, Akhtar appeared in New York County Supreme Court and was sentenced to three to six years imprisonment for the September 1995 controlled substance charge. (A 403, 515, 519).

Akhtar's deportation hearing resumed in August 1996. (A 403; B 6). Akhtar, by then incarcerated, did not appear. (A 514–16). The IJ, evidently unaware of Akhtar's incarceration, ordered Akhtar deported *in absentia.* (A 500, 515–16).

In January 1999, the INS moved to reopen Akhtar's deportation proceedings, having learned that his failure to appear in August 1996 had been due to his incarceration.[3] (A 488–89). In April 1999, an IJ transferred venue to Buffalo, New York, where Akhtar was incarcerated. (A 473). On April 21, 1999, the INS lodged an additional charge that Akhtar was deportable because of the June 1996 felony narcotics conviction. (A 95–96).

After several additional adjournments for various reasons, Akhtar's deportation hearing finally went forward on August 23, 1999. (A 99, 110–12, 125–26).

Akhtar sought relief under INA § 212(c) and also applied for deferral of his removal to Pakistan under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention" or "Convention"), claiming that he would be

---

1. INA § 237(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance … other than a single offense involving [a small amount of marijuana for one's own use] is deportable."; INA § 237(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."; INA § 101(a)(43), codified at 8 U.S.C. § 1101(43) defines "aggravated felony" to include illicit trafficking in a controlled substance.

2. Prior to its repeal, INA § 212(c) empowered the Attorney General, in her discretion, to waive deportation of any alien who had been admitted for lawful permanent residence and who had resided in the United States for at least seven years. *See* 8 U.S.C. § 1182(c) (1994), repealed by Pub.L. No. 104–208, 110 Stat. 3009–615 (Sept. 30, 1996).

3. *See* 8 U.S.C. § 1252b(c)(3)(1994)(*in absentia* deportation order may be rescinded upon motion to reopen demonstrating that alien's failure to appear at deportation hearing was due to his incarceration in state custody).

tortured in Pakistan because he is a Christian.[4]

Both Akhtar and his brother testified in support of his applications for § 212(c) relief and deferral of removal. (A 144–276). In addition to his testimony about his background, his drug use and criminal record, Akhtar testified he had read articles describing that Christians in Pakistan were being "blasphemed" and that people who spoke against the Koran were killed, but he admitted that he did not know anything about the current Pakistani government, that he did not know who the president of Pakistan was or the president's position with respect to Christians. (A 268 71). He also admitted that he had not read the State Department's report concerning conditions in Pakistan. (A 270).

Akhtar also sought to offer the testimony of Reverend Samuel Samson, who he claimed to be an expert on religious discrimination in Pakistan. (A 185). In attempting to qualify as an expert, Samson testified that he graduated from seminary in Pakistan in 1970, then worked as a pastor there until 1974. (A 187–90). He thereafter worked as a travel agent in Pakistan for about twelve years. (A 191–92). Samson testified that he emigrated to the United States in 1991, and had since not returned to Pakistan. (A 192–94, 196). Samson testified that he was in contact with various friends and relatives who had been to Pakistan, and that he received information on conditions in Pakistan from various media and newspaper articles, friends, and faxes. (A 199–200, 208–09). He further testified that he spoke at different churches and groups, and had twice spoken at demonstrations in front of the

United nations in New York, about the treatment of Christian churches in Pakistan. (A 201–04).

The IJ declined to designate Samson as an expert on current conditions in Pakistan, observing that he had not been to Pakistan since 1991 and that his knowledge of the subject matter was limited to either hearsay or the contents of documents that could be submitted. (A 90–91, 211). The IJ also noted that Samson had served as a pastor in Pakistan for only a few years, and then was not affiliated with any church for the twelve years prior to his immigration to the United States. *Id.*

Akhtar also submitted documentary evidence respecting conditions for Christians in Pakistan, including newspaper articles, newsletters, congressional press releases and letters, demonstration flyers, and Amnesty International's country report, all of which were accepted by the IJ.

### The Immigration Judge's Decision

In September 1999, the IJ ordered Akhtar deported to Pakistan and denied the requests for § 212(c) relief and for deferral of removal under the Torture Convention. (A 68–93). The IJ found that Akhtar was not barred from seeking § 212(c) relief, but concluded that the adverse factors against granting discretionary relief "far, far outweigh[ed]" the equities in favor. (A 75–86). The IJ also concluded that Akhtar failed to demonstrate that it was "more likely than not" that he would be tortured in Pakistan by or with the acquiescence of public officials, as required for a grant of protection under the Torture Convention. *See* A 88 (citing 8 C.F.R. § 208.16(c)(2)).

---

4. The regulations that implement the Torture Convention refer to deferral of "removal" but the protection is available to persons in both removal and deportation proceedings. *See* 8 C.F.R. § 208.18(b)(1). Prior to April 1997, aliens were subject to either "deportation" or "exclusion" proceedings, depending on whether they had affected "entry" into the United States. *See Mejia–Ruiz v. I.N.S.*, 51 F.3d 358, 360 n. 1 (2d Cir.1995). In 1996,

Congress eliminated the distinction between these two types of proceedings and created a uniform track of "removal" proceedings. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") § 304(a)(3), 110 Stat. 3009–589 to –593 (1996) codified at 8 U.S.C. § 1229a (Supp. IV 1998). For ease of reference, this Court refers to deferral of removal although Akhtar was subject to deportation proceedings and ordered deported.

Akhtar appealed the IJ's decision to the BIA, arguing that the IJ (1) arbitrarily denied him § 212(c) relief; (2) applied the wrong standard for deferral of removal under the Torture Convention; and (3) violated his due process rights in precluding Samson's testimony. (A 61). In January 2000, the BIA dismissed Akhtar's appeal, affirming the IJ's decision in every respect, and ordered Akhtar deported to Pakistan. (A 2–4).

This petition followed.[5] Akhtar now reiterates the arguments he raised before the BIA. The Government argues that each claim should be either dismissed for lack of jurisdiction or rejected as meritless.

## DISCUSSION

*Jurisdiction to Review § 212(c) Determination*

Judicial review of deportation proceedings, like Akhtar's, which became administratively final after October 30, 1996 but were initiated before April 1, 1997 are governed by the provisions of the INA § 106, 8 U.S.C. § 1105a (1994), as modified by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") § 309(c)(1)(B),(4), 110 Stat. 3009–625 to –626 (1996). *See Henderson v. I.N.S.,* 157 F.3d 106, 117 (2d Cir.1998). The transitional rules provide that "there shall be no appeal permitted in the case of an alien who is [ ] deportable by reason of having committed a criminal offense covered in section [ ] 241(a)(2)(A)(iii),(B) [ ] of the Immigration and Nationality Act [8 U.S.C. § 1251(a)(2)(A)(iii),(B)(1994)(covering aliens convicted of aggravated felonies and controlled substance offenses) ]." IIRIRA § 309(c)(4)(G), 110 Stat. 3009–626 (1996).

The Second Circuit has held that criminal aliens barred from appealing their deportation orders by IIRIRA § 309(c)(4)(G) may seek habeas review of such orders under 28 U.S.C. § 2241. *See Henderson,* 157 F.3d at 119, 122; *Jean–Baptiste v. Reno,* 144 F.3d 212, 219–20 (2d Cir.1998). The Government argues that the scope of habeas review, however, does not encompass a discretionary determination to deny an applicant § 212(c) relief.

In *Henderson,* the Second Circuit observed that in the wake of AEDPA and IIRIRA, the scope of review that remains available to criminal aliens challenging deportation orders "is considerably narrower than the review that was available prior to the 1996 amendments." 157 F.3d at 119. Indeed, the court noted that the 1996 amendments were intended to make "administrative [immigration] decisions nonreviewable to the fullest extent possible under the Constitution." *Id.* The court concluded that the scope of habeas review of criminal aliens' deportation orders included constitutional questions and questions of statutory interpretation or "pure law," such as those that raise "the Attorney General's interpretation of the immigration laws." *Henderson,* 157 F.3d at 120; *accord St. Cyr v. I.N.S.,* 229 F.3d 406, 410 (2d Cir.2000)(questions of pure law, as distinguished from "the BIA's refusal to exercise discretion in [petitioner's] favor," are cognizable on habeas review of a final order of removal). In addition, the court specifically noted that the statutory questions at issue in *Henderson* were "ones of general applicability, and do not involve

---

**5.** Akhtar initially sought judicial review of the BIA's decision by filing a petition for review in the Second Circuit on January 27, 2000. *See Akhtar v. I.N.S.,* No. 00–4016 (2d Cir.). The Second Circuit, however, has held that a criminal alien such as Akhtar seeking review of his deportation was barred from doing so by direct petition to a circuit court in light of 1996 legislation, and could do so only by petition for writ of habeas corpus in the district court. *See Henderson v. I.N.S.,* 157 F.3d 106, 112, 119–22 (2d Cir.1998) *cert. denied* 526 U.S. 1004, 119 S.Ct. 1141 , 143 L.Ed.2d 209 (1999). Akhtar withdrew his petition for review by Stipulation and Order in order to file a habeas petition in district court by April 10, 2000. *See* Stipulation and Order, *Akhtar v. I.N.S.,* No. 00–4016 (2d Cir. May 18, 2000). Akhtar did not file this habeas petition, however, until June 27, 2000.

the Attorney General's application of law to specific facts." *See Henderson,* 157 F.3d at 120 n. 12.

The Second Circuit did not expressly hold that the Attorney General's factual findings or discretionary decisions lie beyond the scope of habeas review, but several circuits and at least one court in this district have. *See Liang v. I.N.S.,* 206 F.3d 308, 321 (3d Cir.2000)("We agree, of course, with the proposition that habeas corpus need not preserve review of discretionary decisions"); *Bowrin v. U.S. I.N.S.,* 194 F.3d 483, 490 (4th Cir.1999)("Only questions of pure law will be considered on § 2241 habeas review. Review of factual discretionary issues is prohibited."); *Sol v. I.N.S.,* 2000 WL 1154048, No. 97 Civ. 5994 (S.D.N.Y. Aug. 15, 2000)(habeas court lacks jurisdiction to review discretionary decision).

■ Here, the immigration judge held that, as a matter of law, Akhtar was eligible to apply for § 212(c) relief, but found that based on the evidence presented, the discretionary relief was not warranted. That decision was affirmed by the BIA, and the limited scope of habeas review that is available to Akhtar does not extend to the review of such a discretionary determination.

*Jurisdiction to Review Denial of Application Under Torture Convention for Deferral of Removal*

■ Treaties are not, in general, privately enforceable. Unless a treaty is self-executing, its terms give rise to a private cause of action only if Congress enacts authorizing legislation. *See Igartua De La Rosa v. United States,* 32 F.3d 8, 10 n. 1 (1st Cir.1994); *Columbia Marine Svcs., Inc. v. Reffet Ltd.,* 861 F.2d 18, 21 (2d Cir.1988); *Dreyfus v. Von Finck,* 534 F.2d 24, 30 (2d Cir.1976). In giving its advice and consent to ratification of the Torture Convention, the Senate expressly declared that the provisions of the Convention would not be self-executing. *See* S. Exec. Rep. No. 30, 101st Cong., 2d Sess. 31 (Aug.

30, 1990); 136 Cong. Rec. S17486–01, 1990 WL 168442 (Oct. 27, 1990); S. Treaty Doc. No. 100–20, at 2. While the question of "[w]hether a treaty is self-executing is an issue for judicial determination," *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 373 (7th Cir.1985), the intentions of the parties to the treaty are an important consideration, and the Senate's declaration is evidence that the United States did not intend for the Convention to be self-executing. Indeed, each court that has considered the issue has determined that the Convention is not self-executing. *See, e.g., Sandhu v. Burke,* No. 97 Civ. 4608, 2000 WL 191707 at *9 (S.D.N.Y. Feb.10, 2000); *Barapind v. Reno,* 72 F.Supp.2d 1132, 1149 (E.D.Cal.1999); *Calderon v. Reno,* 39 F.Supp.2d 943, 956–57 (N.D.Ill. 1998); *White v. Paulsen,* 997 F.Supp. 1380, 1386 (E.D.Wash.1998); *In re Extradition of Cheung,* 968 F.Supp., 791, 803 n. 17 (D.Conn.1997). Given the apparent intent of the United States that the Convention not be self-executing, this Court joins the numerous other courts that have concluded that the Convention is not self-executing.

■ The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105–277, 112 Stat. 2681–761 (Oct. 21, 1998), authorized the Attorney General to promulgate regulations implementing the United States' obligations under the Torture Convention, subject to the conditions of ratification set by the Senate. *See* FARRA § 2242(b), 112 Stat. 2681–822 (1998). In addition, FARRA created a limited private right of action for claims under the Torture Convention and authorized limited jurisdiction for courts to review decisions made with respect to claims for protection under the Convention.

[N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims under the Convention or this section … except as part of the review of a final order of removal pursuant to section 242 of the [INA] (8 U.S.C. § 1252).

FARRA § 2242(d), 112 Stat. 2681–822(1998). The legislative history behind this provision underscores the limited judicial review of Torture Convention claims:

> The provision agreed to by the conferees does not permit for judicial review of the regulations [to be promulgated within 120 days] or of most claims under the Convention.

H.R. Conf. rep. No. 432, 105th Cong., 2d Sess. 150, 1998 WL 105466 (Mar. 10, 1998)(emphasis added). In addition, the regulations implementing the Torture Convention were required to be consistent with the INA. *See id.*

INA § 242, 8 U.S.C. § 1252 (Supp. IV 1998), in turn, bars certain criminal aliens—such as Akhtar—from obtaining judicial review of orders entered against them. Specifically, INA § 242(a)(2)(C) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section [ ] 237(a)(2)(A)(iii),(B) [8 U.S.C. § 1227(a)(2)(A)(iii), (B) (Supp. IV 1998)(pertaining to aliens convicted of aggravated felonies and controlled substance offenses)].

8 U.S.C. § 1252(a)(2)(C)(Supp. IV 1998). The provisions of INA § 242 thus do not permit aliens who are deportable due to a criminal conviction to obtain judicial review of deportation orders.

Consistent with this bar in INA § 242, the regulations that were promulgated to implement the United States' obligation under the Torture Convention provide that:

> any appeal or petition regarding an action, decision, or claim under the Convention [ ] shall not be deemed to include or authorize the consideration of any administrative order or decision, or portion thereof, the appeal or review of which is restricted or prohibited by the [INA].

8 C.F.R. § 208.18(e)(1)(2000). In addition, the regulations clarify that:

> [e]xcept as otherwise provided, nothing in this paragraph shall be construed to create a private cause of action or to authorize the consideration or issuance of administrative or judicial relief.

8 C.F.R. § 208.18(e)(2)(2000).

Accordingly, because review of claims under the Torture Convention can only be had as authorized by Congress—in this case, pursuant to the terms of INA § 242—and because § 242 does not permit criminal aliens such as Akhtar to obtain judicial review, Akhtar is barred from seeking review of the denial of his request under the Torture Convention for deferral of removal. *See Diakite v. I.N.S.,* 179 F.3d 553, 554 (7th Cir.1999).

Akhtar points to the Second Circuit's recent decisions in *St. Cyr. v. I.N.S.,* 229 F.3d 406 (2d Cir.2000) and *Calcano Martinez v. I.N.S.,* 232 F.3d 328 (2d Cir.2000) in support of his assertion that this Court has jurisdiction to review the Torture Convention claims. Those decisions, however, concerned a criminal alien's ability to seek review of his removal order under 28 U.S.C. § 2241. The petitioners there sought review of a decision that they were barred from a certain type of statutory relief from removal. Neither case involved review of claims for protection under the Torture Convention. The Court of Appeals held only that certain "purely legal" challenges to removal orders—in those case, whether a certain statutory provision barred discretionary relief from removal retroactively—are cognizable on habeas corpus review. Akhtar, however, challenges the specific factual determination that he failed to demonstrate that it is more likely than not that he will be tortured if returned to Pakistan.

Accordingly, for the reasons set forth above, this Court has no jurisdiction to review Akhtar's Torture Convention claim.

**198**

Akhtar also contends that the IJ denied him due process by excluding the alleged expert testimony of Samson.

█ Deportation proceedings are civil in nature; as such, many of the protections that apply to criminal defendants are inapplicable. *See I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). In particular, due process requires only that a person in deportation proceedings be afforded a full and fair hearing. *See Michel v. I.N.S.,* 206 F.3d 253, 259 (2d Cir.2000). Similarly, the INA requires that a person in deportation or removal proceedings have a "reasonable opportunity" to present evidence on his behalf. *See* 8 U.S.C. § 1252(b)(1994); *see also id.* § 1229(b)(4)(B)(Supp. IV 1998)(same for removal proceedings).

█ A person raising a due process challenge to the conduct of his deportation proceeding must demonstrate both that (1) he was prevented from having a reasonable opportunity to present evidence, and (2) any such error resulted in prejudice (that is, affected the outcome of the proceeding). *See Colmenar v. I.N.S.,* 210 F.3d 967, 971 (9th Cir.2000); *Kuciemba v. I.N.S.,* 92 F.3d 496, 501 (7th Cir.1996).

█ Akhtar complains only that the IJ's exclusion of Samson's testimony violated due process. Samson's testimony, however, would have been cumulative of the extensive documentation regarding conditions in Pakistan that the IJ did receive in evidence. (A 292–314, 334–54, 366–96). In addition, as the IJ noted, Samson had no direct knowledge of the conditions in Pakistan, and his knowledge was limited to faxes and news clippings that Akhtar could have submitted. Akhtar has not demonstrated that the IJ's decision to disallow Samson's testimony resulted in the denial of a full and fair hearing, or that it prejudiced the outcome.

*ORDER*

Accordingly, for the reasons set forth above, it is hereby

ORDERED that Akhtar's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is denied; and it is further

ORDERED that the stay of deportation entered by this Court on 14 July 2000 is hereby lifted.

The Clerk of Court is directed to close this case.

SO ORDERED.