Juan Eduardo MILLIAN–ZAMORA, Petitioner,

v.

John ASHCROFT, U.S. Attorney General; Doris Meissner, Commissioner, Immigration and Naturalization Service; Roy Schremp, New Orleans INS District Director; Edward McElroy, New York INS District Director; and Immigration and Naturalization Service, Respondents.

No. 01 CV 2305(NG).

United States District Court, E.D. New York.

Oct. 23, 2002.

Juan Eduardo Millian–Zamora, pro se.

Alan Vinegrad, U.S. Atty., Scott Dunn, Asst. U.S. Atty., for respondent.

## *OPINION AND ORDER*

GERSHON, District Judge.

Juan Eduardo Millian–Zamora petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his final order of deportation to Cuba and denial of his application for deferral of removal pursuant to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "Torture Convention"). Petitioner, who had been paroled into the United States after he arrived as part of the Mariel boatlift, was ordered deported in 1985 after an Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) denied his applications for asylum and with-

holding of removal in light of his state felony conviction for armed robbery and the perceived danger to the community he presented. Petitioner was released in 1988 after the Immigration and Naturalization Service (INS) had been unable to deport him. Petitioner subsequently was convicted in the Eastern District of New York of conspiracy and attempted possession of heroin with intent to distribute, and after serving a sentence of imprisonment, was transferred to INS custody for deportation on November 9, 1998. Petitioner's motion to reopen his deportation proceedings to consider his application for deferral of removal pursuant to the Torture Convention, which the United States had become signatory to during petitioner's federal imprisonment, was granted by BIA. Following a renewed hearing, the IJ denied the application for relief in an oral opinion finding that petitioner failed to sustain his burden of proving that it was more likely than not that he would be subjected to torture upon his return to Cuba. See 8 C.F.R. §§ 208.17 (pertaining to deferral of removal under Torture Convention), 208.18(a) (defining torture under the Convention). BIA dismissed petitioner's appeal on October 30, 2000, finding that petitioner had failed to sustain his burden of proof with his testimony, which the Board characterized as "vague" and lacking detail, concerning petitioner's prior arrests and alleged mistreatments in Cuba before he came to the United States, the reasons the Cuban government would now regard him as a political foe, or the reasons for his belief that he would be tortured if he returned.

Petitioner's habeas corpus petition claims: (1) his application for a deferral of removal under the Torture Convention should have been granted; (2) he was denied a full and fair hearing by the IJ's refusal to allow into evidence certain documents in Spanish that had not been trans-

lated; and (3) he was deprived of a full and fair review because testimony of one of his witnesses at the hearing had not been recorded or transcribed. Respondents, in addition to responding on the merits, assert that the court does not have jurisdiction to consider these claims.

### Jurisdiction

■ Respondents argue that the court lacks jurisdiction to consider the petition based upon Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), implementing the United States' accession to the Torture Convention, which provides: "Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act [INA] (8 U.S.C. § 1252)".

A district court has jurisdiction under 28 U.S.C. § 2241(c)(3) to consider a claim that a person is "in custody in violation of the Constitution or laws or treaties of the United States." In *INS. v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that habeas corpus jurisdiction under § 2241 to review a final order of removal was not repealed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). The Court was unwilling to infer that the jurisdiction-stripping provisions of those laws, codified at 8 U.S.C.

§ 1252, demonstrated with sufficient clarity a Congressional intent to bar habeas jurisdiction. *See Liu v. INS*, 293 F.3d 36, 37 (2d Cir.2002) ("federal courts retain § 2241 jurisdiction over petitions from criminal and non-criminal aliens alike"). Respondents offer no basis for finding that the holding of *St. Cyr* is inapplicable to review of this deportation order, and none is apparent. The restriction of judicial review in FARRA § 2242(d), which cross-references the restrictions on judicial review in INA § 242 at issue in *St. Cyr*, like those in AEDPA and IIRIRA, is too general to presume that Congress intended an implied repeal of habeas corpus jurisdiction.

In fact, district courts within the Second Circuit have exercised jurisdiction under § 2241 to review denials of claims under the Torture Convention. However, that jurisdiction is limited to consideration of constitutional or legal challenges to removal orders, not to review of factual or discretionary determinations respecting a Torture Convention claim. *Akhtar v. Reno*, 123 F.Supp.2d 191, 195–98 (S.D.N.Y. 2000) (only legal and constitutional issues, not factual basis for INS's finding that applicant had failed to show likelihood of torture, may be considered in habeas corpus review of denial of Torture Convention claim); *see Abimbola v. Ashcroft*, 2002 WL 2003186, at *5–6 (E.D.N.Y.2002) (no jurisdiction to review IJ's credibility determination in considering Torture Convention claim), citing *Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2624, 153 L.Ed.2d 807 (2002); *Hernandez–Osoria v. Ashcroft*, 2002 WL 193574, at *4–5 (S.D.N.Y.2002) (no jurisdiction to review factual basis of BIA's denial of reopening of deportation to consider Torture Convention claim). Indeed, although petitioner argues that the determination of the merits of his claim was

erroneous and contrary to the evidence, he also states in his reply (labeled "Supplement to Petition"), in response to respondent's jurisdictional argument, that he "does not per se challenge the denial of relief from the BIA". Accordingly, although this court may not review the facts or the merits of INS's denial of petitioner's claim under the Torture Convention, it may properly consider petitioner's claims that he was denied procedural fairness in the deportation proceedings, *i.e.*, that his statutory and constitutional rights were violated.

### *Exclusion of Spanish–Language Documents*

■ The documents that the IJ excluded from evidence, because they had not been translated from Spanish into English, are: (1) a communication (variously referred to as a letter and an affidavit) from an officer of Alpha 66, an entity described by petitioner as the best known anti-Castro organization, explaining petitioner's anti-Castro activity and describing the dangers he faced upon return; and (2) samples of anti-Castro propaganda that petitioner claims he caused to be disseminated in Cuba as part of his activities with another organization opposed to the current Cuban government, the Martiano Democratic Movement. The IJ ruled that he would not "accept something in Spanish" unless it was "properly certified and properly translated" into English. Although petitioner characterizes his claim as one of exclusion of documentary evidence, he does not dispute the IJ's statement at the hearing that the IJ did not understand Spanish. Since petitioner could not have benefitted from the mere act of submitting to the IJ documents that the IJ was unable to read, his claim necessarily also includes the assertion of a right to have an English-language translation of those documents prepared when petitioner had not done so.

■ An alien subject to removal or deportation proceedings is guaranteed the opportunity for a full and fair hearing, including the right to present evidence in his behalf, by statute, regulation, and under the Due Process Clause. *Jacinto v. INS,* 208 F.3d 725, 727–28 (9th Cir.2000), cited with approval in *Yang v. McElroy,* 277 F.3d 158, 162 n. 3 (2d Cir.2002); *Akhtar,* 123 F.Supp.2d at 198; *see Augustin v. Sava,* 735 F.2d 32, 37 (2d Cir.1984) (incompetent translation of political asylum proceeding denied applicant the right to "a hearing where the likelihood of persecution can be fairly evaluated"). The statute governing the conduct of removal proceedings provides that, under regulations of the Attorney General, "the alien shall have a reasonable opportunity to ... present evidence on the alien's own behalf". 8 U.S.C. § 1229a(b)(4)(B). Similarly, 8 C.F.R. § 240.10(a)(4) requires that the IJ advise the applicant "that he or she will have a reasonable opportunity to ... present evidence in his or her own behalf." Petitioner, however, cannot point to any statute or regulation which requires that a hearing officer accept into evidence without a competent translation documents in a foreign language that the hearing officer does not understand, or that requires INS to itself provide translation services for those documents if the petitioner does not or cannot do so. On the contrary, 8 C.F.R. § 103.2(b)(3), which is a general provision that is not specifically directed to the conduct of deportation or similar proceedings, provides: "Any document containing foreign language submitted to the Service shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the

foreign language into English." The only regulation addressing translation in removal proceedings, 8 C.F.R. § 240.5, requires that any interpreter in a hearing before the IJ who is not a government employee "shall be sworn to interpret and translate accurately."

Whether an applicant for relief under the Torture Convention might nevertheless be entitled in some circumstances to assistance in translation of documents, if necessary to secure the applicant's right to present evidence and to have a full and fair hearing, is a question that need not be decided in this case. A petitioner claiming that he was denied a full and fair hearing because of the absence of, or deficiencies in, translation is not entitled to relief absent a showing of prejudice. *See Gutierrez–Chavez v. INS,* 298 F.3d 824, 830 (9th Cir.2002) (denying relief where no showing that a more competent translation of petitioner's testimony "likely would have made a difference in the outcome" by changing the IJ's appraisal of his credibility); *Rusu v. INS,* 296 F.3d 316, 324 (4th Cir.2002) (relief denied where, despite difficulties in communication, "record demonstrates that, by the end of the hearing, the IJ understood the factual predicate" for asylum claim); *Akhtar,* 123 F.Supp.2d at 198 (due process challenge requires showing that denial of a reasonable opportunity to present evidence "affected the outcome of the proceeding"). A claim based on the absence of translation of documents, if such a requirement were found to exist in appropriate circumstances, similarly would not warrant relief absent a showing of prejudice.

Petitioner does not make the required showing of prejudice. Petitioner in his testimony informed the IJ of the general nature of the Alpha 66 communication and the literature that was excluded from evidence, and the record does not show that he would have been restricted by the IJ if he had attempted to describe those materials in greater detail. Petitioner also does not establish a likelihood that the IJ or BIA would have appraised the evidence differently if verbatim translations of these materials had been provided, especially since the IJ in his oral opinion denying relief was skeptical of the extent to which petitioner participated in anti-Castro activity given that "he was incarcerated in this country a great deal of time." There is no indication that the text of the literature itself, however vehemently anti-Castro it might have been, demonstrated petitioner's involvement in its dissemination or the Cuban government's awareness of petitioner's alleged role in its distribution. The Alpha 66 communication apparently did refer to activities by the petitioner, although it is unclear from the record when and to what extent, but petitioner has not explained his failure to procure testimony from the letter's author, an alternative that the IJ specifically mentioned at the hearing, or from another Alpha 66 official, instead of attempting to rely on hearsay statements whose probative value was limited. In sum, petitioner is not entitled to relief based upon his claim of exclusion of documents because he has failed to show prejudice.

### Failure to Transcribe Testimony of Witness

Petitioner claims that he was denied procedural fairness in his administrative review because of the absence of a transcript of the testimony of one of his witnesses at the hearing, Orlando Gomez–Echemendia. It is clear from the record that Mr. Gomez–Echemendia did, in fact, testify for petitioner by telephone and that his testimony was neither recorded nor preserved. Although respondents now assert that any gap in the record occurred in "conversations" during the testimony of

another witness for petitioner, Zoraida Ocasio, whose testimony was otherwise recorded, the administrative record before BIA shows that respondents are incorrect.

After petitioner filed his notice of appeal to BIA, he sent to the IJ a letter advising that the transcript was incomplete because of the omission of Mr. Gomez–Echemendia's testimony. This letter was returned to petitioner by the clerk with a notation that, since the case was on appeal, any documents should be forwarded to BIA. INS Attorney Carl Perry then advised BIA by letter that based upon review of the notes in its file, INS agreed with petitioner that the transcript was incomplete, and joined in requesting that the tapes be examined, the hearing retranscribed, and the briefing schedule suspended in the interim. Mr. Perry's letter specifically noted that the testimony of at least one witness, as well as discussion of certain administrative matters, was missing. However, on August 18, 2000, BIA granted both sides only a three week extension of time to file, and warned that it rarely granted further extensions. BIA's notice advised of the following *ex parte* communication with the IJ: "According to the Immigration Judge, he went off the record to speak to the telephonic witnesses. There are no transcripts of the telephonic witnesses (Orlando Gomez–Echemendia)." These communications thus acknowledge that the IJ spoke to Mr. Gomez–Echemendia by telephone, and that the communications were not recorded or transcribed. Further confirmation that the testimony of one witness for petitioner was not transcribed at all arises from the IJ's oral decision, which states: "The evidence is [*sic* ] consisted of that of the respondent and testimony of two witnesses and Exhibits 1 through 7 and the entire record of proceedings from this prior hearing." The transcript includes only testimony of petitioner and Mrs. Ocasio,

not any other witness for petitioner, and there is no reference in the transcript to an Exhibit 7, only Exhibits 1 through 6.

In his reply papers, petitioner represents that Orlando Gomez–Echemendia testified to the following: Petitioner, whom he has known since elementary school, was harassed, detained, tortured and beaten by Cuban police as the result of his anti-Castro activities, and the witness believed petitioner would be imprisoned and likely tortured because of anti-government activity if he returned. Gomez–Echemendia had personally witnessed petitioner's activities and beatings he received in Cuba. The witness visited Cuba in 1997 and 1998, and spoke to members of petitioner's family and former acquaintances, some of whom admitted testifying against petitioner in response to charges that had been brought against them. The witness had also acted as a courier to convey information from petitioner to his family and members of the Cuban underground. During one trip, Gomez–Echemendia was approached by a former schoolmate who had become a government prosecutor, who warned him of an outstanding "political" indictment against petitioner and cautioned that petitioner should not attempt to visit Cuba. Respondents have not controverted petitioner's description of the substance of the witness's testimony, but attached to their response a sworn declaration of INS attorney Carl Perry, the same individual who had sent the letter to BIA described above, which asserts that his "office" received a telephone call from BIA, after Perry had sent his letter, "stating that the Immigration Judge had reviewed the case and had stated that the transcript was complete. Apparently certain discussions with a witness had taken place off the record and had not been pertinent to the case so these discussions had not been made part of the record."

The documentary evidence before INS establishes that none of the telephonic testimony of one witness for petitioner, Orlando Gomez–Echemendia, was recorded, in clear violation of statute and regulation. 8 U.S.C. § 1229a(b)(4)(C), dealing with aliens' rights in removal proceedings, requires that "a complete record shall be kept of all testimony and evidence produced at the proceeding." 8 C.F.R. § 240.9 provides: "The hearing before the immigration judge, including the testimony, exhibits, applications, proffers, and requests, the immigration judge's decision, and all written orders, motions, appeals, briefs, and other papers filed in the proceedings shall constitute the record in the case. The hearing shall be recorded verbatim except for statements made off the record with the permission of the immigration judge. In his or her discretion, the immigration judge may exclude from the record any arguments made in connection with motions, applications, requests, or objections, but in such event the person affected may submit a brief." The regulation's allowance of off-the-record "statements" or "arguments" cannot reasonably be construed to authorize failure to record the sworn testimony of a witness. In the absence of a transcript of any of the witness's statements, the court cannot accept unsworn and unsupported characterizations of the missing "discussions" as not being "pertinent", an assertion that is not made in BIA's August 18, 2000 order, which states only that the IJ had advised that he spoke to Mr. Gomez–Echemendia, a telephonic witness, off the record and no transcript existed. If an appeal is taken, INS, not the petitioner, is required to forward to BIA the "record of proceeding," 8 C.F.R. § 3.5, and BIA is required to consider all of the relevant evidence. *Okoroha v. INS*, 715 F.2d 380, 383–84 (8th Cir.1983) (remanding deportation proceeding because omission of exhibits from the administrative appeal record precluded fair administrative or judicial review). These requirements were not satisfied here.

The violation of law and regulation requires a remand to INS for further proceedings even if prejudice had not been shown. *See Waldron v. INS*, 17 F.3d 511, 518 (2d Cir.), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994) ("when a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required"), cited with approval in *Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 66 (2d Cir. 2002). However, even if a showing of prejudice is needed, the requirement is satisfied here because petitioner was deprived of his right to a full and fair determination of his appeal of the IJ's decision on a complete record.

Especially where the district court has no jurisdiction to review the facts or the correctness of BIA's determination, it is imperative that BIA render its decision upon a full record. It is not for this court to speculate whether the missing testimony would or should have yielded a different result; that determination is properly made by BIA on the basis of a complete and accurate record. Although the actual testimony is unknown, it suffices that the alleged testimony of Gomez–Echemendia as proffered by petitioner was relevant and material; it corroborated his claims that he had engaged in anti-Castro activity, that he had suffered beatings and other reprisals as a result, and that he had reason to fear his treatment if he returned to Cuba. *Cf. Perez–Lastor v. INS*, 208 F.3d 773, 780 (9th Cir.2000) (alien suffered prejudice where inadequate translation of his testimony raised substantial doubt that he

had received a full opportunity to present evidence and to have his credibility evaluated fairly); *Ortiz–Salas v. INS*, 992 F.2d 105, 106–07 (7th Cir.1993) (denying relief based on inaccurate and incomplete hearing transcript where no showing that the omitted testimony was material or helpful to petitioner). Because of the procedural irregularity, BIA did not have the benefit of the Gomez–Echemendia testimony in deciding that petitioner had failed to sustain his burden of proof because his testimony was "vague and lacked detail".

The Board should determine whether there should be a new hearing or whether it is feasible to accurately reconstruct the record. If reconstruction of the omitted testimony is not possible, a new hearing must be held. *See Okoroha*, 715 F.2d at 384 (if on remand INS cannot locate exhibits, petitioner must be afforded the "opportunity to submit new documentation and again appear before an" IJ).

### Conclusion

The petition for a writ of habeas corpus is granted, the final order of deportation is vacated, and the matter is remanded to the Board of Immigration Appeals for further proceedings. If BIA determines that it is feasible to accurately reconstruct the record to include the omitted testimony of Orlando Gomez–Echemendia, BIA should conduct a new review of petitioner's Torture Convention claim on the complete record after it has been supplemented. Otherwise, a new hearing should be granted on petitioner's claim. Petitioner is not subject to deportation unless and until a new final order of deportation is entered.

**SO ORDERED.**